**UNITED STATES of America, Appellee,**

v.

**Donald S. DALMAN, Appellant.**

**No. 92–2879.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided June 4, 1993.

Thomas V. Omdahl, Grand Forks, ND, argued, for appellant.

Dennis D. Fisher, Asst. U.S. Atty., Fargo, ND, argued, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Donald S. Dalman appeals from the district court's [1] judgment of conviction entered on his guilty plea. We affirm.

**I.**

On June 26, 1992, Dalman was arrested and charged with falsely representing himself to be a citizen of the United States, in violation of 18 U.S.C. § 911, and with making false statements to the United States Immigration and Naturalization Service, in violation of 18 U.S.C. § 1001. Dalman was detained. Shortly after his arrest, Dalman suffered a heart attack, for which he was treated at hospitals in Fargo, North Dakota, and Rochester, Minnesota.

At the July 30, 1992 plea hearing, the district court asked Dalman whether he had consulted with his counsel concerning the consequences of a guilty plea and the constitutional rights that he would be waiving by entering the plea. Dalman answered that he had consulted with his counsel at least three times and that he understood his options and the consequences of pleading guilty.

---

1. The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

In the process of ensuring that Dalman was competent and was entering the plea knowingly and voluntarily, the court asked Dalman explicitly whether he had any disabilities that might impair his understanding of and ability to participate in the plea proceedings. Dalman, under oath, answered "No." The court also asked Dalman whether he was using any medication. In response to the court's inquiry, Dalman said that he was taking four different types of pills, the prescription names of which he could not recall. The court then asked Dalman whether he understood what was happening "right now." Dalman answered "Yes." At no time during the proceeding did Dalman or his counsel indicate that Dalman might be confused or that his mental condition was affected in any way.

The court then discussed with Dalman the consequences of having a felony conviction on his record. The court discussed the United States Sentencing Guidelines with Dalman and described their application to his case. After Dalman had testified under oath that he understood the charges against him, the court went over Dalman's written plea agreement with him. Dalman advised the court that he had read over the plea agreement and had discussed its consequences with his counsel before signing it.

The court then asked the government to provide a factual basis for the plea. When the court asked Dalman whether he agreed with the government's recitation, he answered equivocally, claiming that any violation of the law on his part had been unintentional. The court questioned Dalman at length to determine whether he was pleading guilty because he believed himself to be guilty or because he wanted to enter an *Alford*[2] plea. After a conference with his counsel, Dalman attempted to change his plea to not guilty and continue with his original course of action, which involved proceeding with his appeal of the detention order. At this point, the court, to ensure that Dalman was making an intelligent choice, informed him of the penalties he could receive by electing to proceed, and the range of penalties available if he were to plead guilty.

The court qualified this information, noting that "[t]hose are the factors that you have got to weigh in your own mind." "I'm not doing this in any way to try to induce you or to tell you in any way that I think this is what you ought to do based on what I may or may not do [as far as imposing a sentence]...." After this colloquy, Dalman decided to plead guilty and subsequently entered his guilty plea.

The court asked Dalman throughout the proceeding whether he had any questions regarding any aspect of the hearing and whether he understood the court's explanations. Dalman responded that he had no questions and that he understood his rights and the consequences of his actions in pleading guilty. Following Dalman's plea of guilty to both charged offenses, the court sentenced him to the thirty-one days he had already spent in custody, imposed the required special assessment fee of $50.00 on each count, but imposed no period of supervised release.

## II.

Dalman argues that he did not enter his guilty plea "freely and voluntarily," as required by Federal Rule of Criminal Procedure 11. Dalman challenges his plea on two grounds: (1) that his medications prevented him from entering a voluntary and intelligent plea, and (2) that his plea was void because the government and district court coerced him into pleading guilty.

We have held that "[t]he standard for a valid guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Gregory v. Solem,* 774 F.2d 309, 314 (8th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986).

■ Dalman argues that because he was under the influence of prescribed medications at the time of his guilty plea, he did not knowingly and intelligently plead guilty. Dalman argues that the district court had an obligation, upon learning that Dalman had been using medications, to question him fur-

2. *See North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970).

ther concerning the nature of the medications and their potential effects upon his decision to plead guilty or upon his ability to understand the plea proceedings.

We reject Dalman's contention. Dalman simply has made no showing that the medications so affected him at the time of his plea hearing as to make him incapable of knowingly and intelligently entering his plea of guilty. *See Long v. State of Iowa,* 920 F.2d 4, 6 (8th Cir.1990). Our review of the record satisfies us that the district court adequately questioned Dalman concerning his medications. Moreover, Dalman's performance during the plea hearing is inconsistent with his after-the-fact claim that he did not understand the proceedings. Dalman engaged in a lengthy colloquy with the district court, contesting certain elements of the charged offenses. There is nothing in the record to indicate that Dalman was not fully in possession of his faculties during the proceedings.

█ Dalman next argues that the district court and the government coerced him into pleading guilty. Dalman contends, essentially, that the court offered him a choice between detention if he did not plead guilty and immediate release if he did. Dalman argues that he pled guilty simply to avoid further incarceration. Dalman, who had suffered a heart attack while in detention, claims that further imprisonment would have been detrimental to his recovery due to the deplorable prison diet and inhospitable accommodations.

Federal Rule of Criminal Procedure 11(d) provides that a plea must be "voluntary and not the result of force or threats or of promises apart from a plea agreement."

Our review of the record of the hearing below convinces us that Dalman's contention is without merit. The district court followed the requirements of Rule 11 in informing Dalman about the nature of the charges against him and the rights that he would waive by entering a guilty plea. Midway through the hearing, Dalman, who had been advised by his attorney not to plead guilty, voiced his desire, after an off-the-record conference with his attorney, to withdraw his plea and proceed with a review of the detention order. At this point, the court, to ensure that Dalman was pleading intelligently, informed him of the penalties he could receive by electing to proceed and the range of potential penalties available if he were to plead guilty. After this colloquy, Dalman agreed once more to plead guilty and then entered his guilty plea.

We do not agree that the district court coerced Dalman into pleading guilty. Dalman was recovering from a heart attack and made known to the court that he believed home medical supervision to be preferable to a continued prison stay with respect to his prospects for recovery. Nonetheless, the district court's action in informing him that deciding to plead not guilty would necessitate continued detention for the weekend was not a threat, but a simple statement of fact. Should Dalman have chosen to plead not guilty, the earliest opportunity for the district court to have reviewed the detention order would have been the following Monday. Likewise, the district court explicitly told Dalman that the information about possible sentences he could receive if he pled guilty was not a subtle attempt "to tell you in any way that I think this is what you ought to do." To agree with Dalman's claim of coercion, we would have to construe this statement to mean the exact opposite of what it plainly conveys, and this we decline to do. If Dalman pled guilty on the strength of the possibility that he would leave federal custody sooner, he chose to exercise an option that we are unwilling to disturb now in absence of evidence that Dalman entered his plea in a manner that was not voluntary.

The judgment is affirmed.