UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-4378
(CR-95-45)

United States of America,

Plaintiff - Appellee,

versus

Marvin J. Damon,

Defendant - Appellant.

O R D E R

The court amends its opinion filed September 17, 1999, as follows:

On the cover sheet, section 6, line 1 -- the section is corrected to begin:  "Remanded by published opinion.  Judge Michael wrote the majority opinion . . . ."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4378

MARVIN J. DAMON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-95-45)

Argued: May 7, 1999

Decided: September 17, 1999

Before WILLIAMS, MICHAEL, and KING,
Circuit Judges.

_____

Remanded by published opinion. Judge Michael wrote the
majority opinion, in which Judge King joined. Judge Williams wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Clayton Gordon, FEDERAL PUBLIC
DEFENDER'S OFFICE, Raleigh, North Carolina, for Appellant.
David John Novak, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Richmond, Virginia, for
Appellee. **ON BRIEF:** William Arthur Webb, Federal Public

Defender, G. Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

**OPINION**

MICHAEL, Circuit Judge:

During Marvin Damon's Rule 11 hearing on the entry of his guilty plea, he told the district court that he was under the influence of an antidepressant drug. The court did not make any inquiry about the drug's effect on Damon, but went on to accept his plea. Damon now challenges the validity of his plea, arguing that the district court had a duty to follow up on the drug ingestion issue in order to determine whether he was competent to plead. We agree. We decline to order that Damon's guilty plea be vacated, however. Instead, we remand for the district court to determine (if it can) whether any drug taken by Damon had the capacity to impair his judgment sufficiently to render him incapable of entering a knowing and voluntary plea.

I.

According to the government, Damon served as an "enforcer" for a heroin distribution ring based in Richmond, Virginia. On October 16, 1995, he was charged (in a third superseding indictment) with various offenses relating to his role in the drug conspiracy, including murder in furtherance of a continuing criminal enterprise in violation of 21 U.S.C. § 848(e)(1)(A). The government filed a notice of intent to seek the death penalty. Thereafter, on January 10, 1996, Damon entered into a plea agreement with the government. He agreed to plead guilty to the federal charge of murder in furtherance of a continuing criminal enterprise and to two additional counts of murder in state court. In exchange for his guilty pleas, the federal government and the Commonwealth of Virginia agreed that they would not seek the death penalty.

On the evening of January 10, 1996, within hours of signing the plea agreement, Damon attempted suicide by trying to hang himself

in his jail cell. After he was found unconscious, he was rushed to the hospital, where he was treated and placed under psychiatric observation. He was released from the hospital on January 13, 1996. Later that day, he was taken to district court to enter his guilty plea. When questioned by the court, however, Damon said that he had been under a lot of "pressure and stress" when he signed the plea agreement and that he no longer wanted to plead guilty. He explained that after signing the agreement, "I realized I probably did wrong and that's why I tried to hang myself that night." The district court accepted this explanation and set a date for trial.

Three days later, on January 16, 1996, Damon returned to court. Government counsel explained that Damon had changed his mind and once again wished to accept the plea agreement. The court then began the inquiry of Damon that is required before a guilty plea can be accepted. See Fed. R. Crim. P. 11. The following exchange took place during the court's questioning:

> THE COURT: Have you recently been treated for any kind of mental illness or addiction to narcotic drugs?
>
> THE DEFENDANT: I haven't been treated.
>
> THE COURT: Are you currently under the influence of any kind of drug or medication or alcoholic beverage?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: What's the nature of the drug?
>
> THE DEFENDANT: Depression.
>
> THE COURT: I can't hear you. You have to speak up.
>
> THE DEFENDANT: Depression.
>
> THE COURT: Antidepressant?
>
> THE DEFENDANT: From the suicide attempt.

3

THE COURT: Do you know anything about the nature of the drug?

MR. ELIADES [counsel for Damon]: Your Honor, all we have for you is the hospital's records with regards to treatment. I think there is a name of a medication on it, Elantin, or something of that nature.[1] And it shows -- "impaired judgment" is in the notes, as well as other things. We can provide these to the Court.

THE COURT: All right. Now, Mr. Damon, have you had an adequate opportunity to receive and review a copy of the indictment, the charges against you?

THE DEFENDANT: Yes, sir.

The court did not ask any follow-up questions about whether the medication had any actual effect on Damon's ability to enter a competent and voluntary plea. Instead, the court continued with the usual questions, asking Damon whether he understood the charges against him, whether he was satisfied with the efforts of his lawyers, whether he understood the terms of the plea agreement, and whether he understood the consequences of his guilty plea. Damon answered these questions in the affirmative. The court also asked his lawyers if they knew of any reason why Damon would not be competent to enter a plea of guilty. The lawyers said they knew of no such reason. The court then accepted Damon's guilty plea, finding that he was competent to enter a plea and that he understood the nature of the charges and the consequences of his plea. On April 30, 1996, the district court sentenced Damon to life imprisonment. Damon made a pro se motion to vacate his plea on May 9, 1996, contending, among other things, that he lacked the capacity to make an intelligent plea because of the

---

[1] According to medical records filed by Damon pro se, he was prescribed two drugs, Desyrel and Ativan. These records were not filed in district court until well after Damon's plea hearing and the denial of his motion to vacate his plea. Specifically, they were filed in connection with a (denied) motion to correct or modify the record that was made after the notice of appeal. Additional medical records are included in the pro se supplemental appendix Damon filed in this court.

4

medication. The district court denied the motion the next day without comment. Damon immediately appealed his conviction and sentence, challenging only the validity of his guilty plea.

II.

A.

Damon contends that the district court had a duty, when informed that he was under the influence of medication, to make further inquiry into his competence to plead guilty. Otherwise, Damon argues, the court could not determine that his plea was knowing and voluntary. We agree.[2] Before a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea. See Godinez v. Moran, 509 U.S. 389, 400 (1993). The court must also determine that the plea is knowing and voluntary. See id.

Rule 11 of the Federal Rules of Criminal Procedure was adopted to standardize the process for accepting guilty pleas in federal court. This rule provides that the court must personally inform the defendant of, and ensure that he understands, the nature of the charges against him and the consequences of his guilty plea. Rule 11 has two principal purposes. First, it "assist[s] the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." McCarthy v. United States, 394 U.S. 459, 465 (1969). Second, it "produce[s] a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." Id.

_____

[2] "We generally review de novo the adequacy of a guilty plea, but in the Rule 11 context, violations are evaluated under a harmless error standard." United States v. Goins, 51 F.3d 400, 402 (4th Cir. 1995) (citations omitted). The government suggests that Damon is, in effect, challenging the district court's denial of his motion to vacate his plea. We review the denial of such a motion for abuse of discretion. United States v. Wilson, 81 F.3d 1300, 1305 (4th Cir. 1996). Although our analysis focuses on the underlying defects in the plea hearing, we believe those defects were sufficiently serious that the district court erred under either a de novo or an abuse of discretion standard. Of course, as we explain later, the court's insufficient inquiry may still be harmless error.

5

Two of our sister circuits require additional inquiry by a district court once a defendant seeking to enter a guilty plea has stated that he is under the influence of drugs. In United States v. Cole, 813 F.2d 43, 47 (3d Cir. 1987), the Third Circuit held that "[w]here significant evidence does come to the attention of the district court that defendant has recently taken drugs, the court has the obligation to inquire further before determining that a competency hearing is not necessary." That court elaborated: "Rule 11 counsels a district court to make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." Id. at 46. The First Circuit reached the same conclusion in United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991). That court explained:

> the district court had reason to suspect that the medications taken by the accused might impinge upon the accused's capacity to enter a voluntary and intelligent plea. At the outset of the Rule 11 hearing, Parra confirmed the district judge's understanding that he had "been under the care of a doctor for a mental or emotional condition." And Parra advised the judge that in that connection he had, within the previous twenty-four hours, taken three medications-- Ativan, Halcion and Restoril. Parra affirmed that, as the judge supposed, "Ativan . . . is . . . a drug to control your nerves or something." Although the judge's further questions did elicit (1) from Parra assurances that he understood the proceedings and knew that a maximum sentence of forty years could be imposed, and (2) from defense counsel and prosecutor their joint assurance that appellant was competent to plead guilty, the judge did not inquire what dosages of Ativan, Halcion and Restoril Parra had ingested and what effects, if any, such medications might be likely to have on Parra's clear-headedness. The judge, though plainly making a substantial inquiry, did not probe deeply enough.

Id. at 595-96. The First Circuit recently reaffirmed this standard. See Miranda-Gonzalez v. United States, 181 F.3d 164, No. 97-1200, 1999 WL 420836, at *2-3 (1st Cir. Jun. 28, 1999) (concluding that it was unnecessary for district court to inquire further about defendant's

6

recent ingestion of drugs when the court had already asked detailed follow-up questions required by Parra Ibanez about the type of drugs taken, the frequency and quantity of doses, and their effects on defendant's cognitive functions).**3**

Here, as in Parra-Ibanez, the district court was put on direct notice that Damon could be under the influence of a drug while entering his plea. Damon told the court that he was "currently" under the influence of antidepressant medication. His lawyer said he thought the name of the drug was Elantin "or something of that nature." The lawyer added that "impaired judgment" was listed as a side effect. This information should have raised a red flag for the district court as to Damon's competence to plead guilty. However, the court simply continued with the routine Rule 11 colloquy without following up on the drug information or making any further inquiry into Damon's mental state or the possibility that his judgment could be impaired.

The plea colloquy required by Rule 11 must be conducted with some flexibility. If a defendant's response to a court's question indicates the need for clarification, follow-up questions must be asked. Otherwise, the Rule 11 colloquy would be reduced to a formalistic ritual, stripped of its purpose. Thus, when an answer raises questions about the defendant's state of mind, the court must broaden its inquiry to satisfy itself that the plea is being made knowingly and voluntarily. The district court erred when it failed to inquire about what effect, if any, Damon's medication had on his ability to make a voluntary plea and to understand the consequences.

Although the district court erred by failing to conduct any further inquiry into Damon's mental state as the result of medication, that error may be harmless. We recognize, of course, that the usual remedy for a Rule 11 violation involving a question of competence or voluntariness is to vacate the defendant's guilty plea. See McCarthy, 394 U.S. at 463-64. This is because of the difficulty in conducting a retrospective examination of a defendant's state of mind when he

_____

**3** Cf. United States v. Dalman, 994 F.2d 537, 539 (8th Cir. 1993) (concluding that district court in Rule 11 proceeding had no duty to make further inquiries about defendant's medication when nothing in the record suggested that defendant was not "fully in possession of his faculties").

entered his plea. See id. at 469-71. However, we are persuaded that Parra-Ibanez (see quote below) offers a sensible and fair alternative to the immediate vacation of Damon's plea. In short, this will require the district court on remand to determine whether the medication Damon took, based on objective data about its nature and effect, had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea. See United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974) (holding that a defendant claiming that he was incompetent to plead guilty must show "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea") (citation omitted). As the First Circuit explained more fully in Parra-Ibanez:

> [T]he traditional concerns about ex post determinations of a defendant's subjective mental state, which have frequently led appellate courts to vacate deficient pleas, do not apply here. It is quite possible, even at this relatively late stage, to conduct an inquiry that would consider (1) the properties of Ativan, Halcion, and Restoril, taken individually and in combination, and (2) the dosages and schedule of Parra's particular regime. That is, a determination as to whether Parra's medications could have significantly interfered with his mental functioning at the time of entering his plea could be made on the basis of objective facts and scientific testimony, without venturing to reconstruct the actual effect of the regimen on Parra's then state of mind. If it is demonstrated that Parra's medicinal regimen did not have the potential to produce a significant mind-altering effect, then the Rule 11 violation could be deemed harmless and the guilty plea left undisturbed. If, on the other hand, it is found that the regimen did have the potential significantly to alter the mind, then the plea could be vacated at that point.

936 F.2d at 596-97 (citations omitted).

We therefore remand to the district court for a determination of whether Damon's medication had the capability to affect his mental faculties sufficiently to render him incompetent to enter a guilty plea.

8

Although we leave the details of the inquiry to the district court, we expect, for example, that the court will want to examine the medical records to determine the type, amount, and schedule of medication taken by Damon before he entered his plea. If Damon's medication did not have the capability of undermining the validity of his guilty plea, the plea may stand. Otherwise, it should be vacated.

B.

The dissent has not made a convincing case for avoiding a remand. First, the dissent is too quick to excuse the inadequate Rule 11 colloquy. It concludes that there was no reason for the district court to inquire further about Damon's medication because there was no evidence to indicate that he was not in full possession of his faculties. That conclusion, however, is based on a record that is incomplete because the district court failed to make sufficient inquiry. When the court was warned that Damon was on medication that could impair judgment, it should have probed for the relevant facts about his medicinal regimen.

Second, the dissent's attempts to distinguish Parra-Ibanez and Cole do not hold up. It argues that Parra-Ibanez is inapplicable because the defendant there had a history of psychological problems. However, that history included attempted suicide, and Damon likewise tried to take his own life just six days before his Rule 11 hearing. Moreover, three days before the hearing Damon discussed his suicide attempt with the district court and told the court that he had been under a lot of pressure and stress. The district court was therefore on notice that Damon's state of mind could be a factor at any Rule 11 hearing. Cole and this case are much the same. For whatever reason, both district courts (there and here) erroneously dropped the subject of medication after the defendants disclosed recent drug use.

Finally, our decision is not inconsistent with Truglio, a case in which we emphasized the need for a searching Rule 11 inquiry. See Truglio, 493 F.2d at 579. Specifically, there is nothing in Truglio that is inconsistent with our admonition that once a district court is advised in a Rule 11 hearing that the defendant is taking medication that could affect his mental functions, the court should pursue the subject with the defendant and counsel to determine whether the defen-

9

dant is competent to plead. That failure to follow up in Damon's case requires us to order a remand for the inquiry we discuss above.

REMANDED

WILLIAMS, Circuit Judge, dissenting:

After learning that he would be sentenced to life in prison, Marvin Damon, who had previously confessed to committing a total of fifteen murders in furtherance of a Continuing Criminal Enterprise (CCE), see 21 U.S.C.A. § 848(e) (West Supp. 1999), moved to vacate his plea agreement (to one count of murder in furtherance of a CCE) on the ground that he was not in control of his faculties at the time he entered his plea due to the influence of the medication that he had taken earlier. The district court, which had repeatedly observed and addressed Damon during the course of the preceding year, conducted an extensive Rule 11 colloquy with Damon to ensure that his plea was freely and voluntarily entered. Notwithstanding the fact that nothing in the record suggests that Damon was not fully in possession of his faculties, the majority today holds that the district court's failure to make further inquires about the medication Damon took earlier rendered the Rule 11 hearing inadequate.

In so holding, the majority completely ignores the test established by this Court in United States v. Truglio, 493 F.2d 574 (4th Cir. 1974), for determining whether drugs impaired a defendant's ability to plead guilty, and it instead adopts (and then applies) the rigid tests established in United States v. Cole, 813 F.2d 43 (3d Cir. 1987), and United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991) -- two cases that are easily distinguishable from the instant case. Because Damon has failed to demonstrate that his mental faculties were impaired by the medication he took prior to pleading guilty, as this Court's precedent requires, I respectfully dissent.

I.

The sole issue raised in this appeal is whether the district court conducted an adequate inquiry pursuant to Rule 11 of the Federal Rules of Criminal Procedure when it concluded that Damon was competent

10

to plead guilty and that his plea was knowingly and voluntarily entered. Accepting a guilty plea from a defendant when he is legally incompetent is, of course, a violation of due process. See Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 1985); see also Drope v. Missouri, 420 U.S. 162, 171-72 (1975) (noting that competency is essential to a fair trial); Pate v. Robinson, 383 U.S. 375, 378 (1966) (holding that the conviction of an incompetent defendant violates due process). The test for mental competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960).[1]

On appeal, Damon alleges that he was not in control of his faculties at the time he entered his plea due to the influence of the medication he had taken earlier. In order to prevail on this point under Dusky, Damon must demonstrate "that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974) (internal quotation marks omitted). For the reasons that follow, I do not believe that Damon has met this burden.

Although the district court did not verbally ascertain the specific dosage of Ativan and Desyrel that Damon had taken earlier, the district court's failure to further explore this issue did not render the Rule 11 hearing inadequate. As required by this Court in Truglio, the district court, after learning that Damon had taken medication during his stay at the hospital, asked Damon whether he understood (1) the charges against him, (2) the constitutional rights he was waiving by pleading guilty, (3) the terms of his Plea Agreement, and (4) the consequences of his guilty plea. Damon answered each question in the affirmative and in a coherent fashion. Damon also told the district court that he was satisfied with his attorneys and that he was in fact

_____

[1] Although Dusky v. United States, 362 U.S. 402 (1960), dealt with a defendant's competency to stand trial, the standard for competence to enter a plea of guilty is the same as that for competence to stand trial. See Godinez v. Moran, 509 U.S. 389 (1993).

11

guilty of the offense to which he pled guilty. The district court also asked Damon's lawyers whether they had any reason to question Damon's competence to plead guilty. Although aware that Damon had taken some medication earlier, his lawyers, both of whom were highly experienced due to the fact that Damon was subject to the death penalty, answered no. See Blackledge v. Allison, 431 U.S. 63, 73 74 (1977) (noting that the representations of the defendant's lawyers at a Rule 11 hearing constitute a formidable barrier in a subsequent challenge to the defendant's competency); United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996) (noting that "competency of counsel certainly is a strong component of a properly-conducted Rule 11 hearing").

Based upon Damon's answers during the Rule 11 hearing and the representations of his lawyers, it is clear that he was competent to stand trial and thus to plead guilty and that he entered an informed, intelligent, and voluntary plea of guilty. See, e.g., Roach, 757 F.2d at 1480; Shaw v. Martin, 733 F.2d 304, 314-15 (4th Cir. 1984). There is absolutely no evidence in the record to indicate that Damon was not in full possession of his faculties at the time of the Rule 11 hearing. Thus, there was no reason for the district court, which had handled Damon's case throughout the preceding year and was in the best position to judge Damon's competence at the time of the Rule 11 hearing, to conduct any further inquiry regarding the medication that Damon had taken earlier. Accord United States v. Dalman, 994 F.2d 537, 539 (8th Cir. 1993) (holding that defendant who was taking four different types of medications was competent to enter plea of guilty, and district court was under no obligation to question him further concerning the nature of the medications and their potential effects upon his decision to plead guilty or his ability to understand the plea proceedings, because he understood the questions asked by the district court and responded in a coherent fashion).

In reaching the opposite conclusion, the majority mistakenly relies on the First Circuit's decision in United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991), and the Third Circuit's decision in United States v. Cole, 813 F.2d 43 (3d Cir. 1987).**2** Both cases are easily dis-

_____

**2** Damon also relies on the Second Circuit's decision in United States v. Rossillo, 853 F.2d 1062 (2d Cir. 1988), which the majority, in my

12

tinguishable from the instant case. In Parra-Ibanez, the defendant, who had a history of psychiatric treatment and drug abuse, told the district court during the Rule 11 hearing that he had taken three different types of medication within the past 24 hours. See 936 F.3d at 591. After pleading guilty, the defendant began to exhibit additional psychological problems. See id. at 592. Under these circumstances, the First Circuit ruled that the district court should have held an evidentiary hearing on the effects of the medication. See id. at 596-98. None of the concerns raised by the First Circuit in Parra-Ibanez are present here. Damon had no past history of mental illness and, unlike the defendant in Parra-Ibanez, there is absolutely no evidence that the medication had any effect on Damon during the Rule 11 hearing or thereafter. In Cole, the defendant stated during the Rule 11 hearing that he had used drugs within the last 12 hours. See 813 F.2d at 44. The district court, however, misunderstood the defendant and was under the impression that he denied any drug use during the Rule 11 hearing. See id. at 46-47. Thus, the facts in Cole are also very different from the facts in the instant case.

In the end, I am convinced that the district court adequately considered Damon's competency to plead guilty. Damon attempted to commit suicide after signing his plea agreement. Thus, the minor amounts of medication that he later took could not have affected his decision to plead guilty. Moreover, based upon his own representations (and those of his attorneys), there is no evidence that Damon lacked the ability to consult with his lawyers with a reasonable degree of rational understanding during the Rule 11 hearing or that he did not understand the nature of the proceedings against him. See Dusky, 362 U.S. at 402. Damon's actions after pleading guilty support this conclusion.

_____

opinion, wisely avoids. In Rossillo, the Second Circuit held that once the district court raised the issue of intoxicants and received an ambiguous response, the district court's failure to obtain a clear response from the defendant on the issue rendered the Rule 11 hearing fatally inadequate notwithstanding the fact that the record was devoid of any evidence that the defendant was incompetent. See id. at 1067. The decision in Rossillo was decided over a persuasive dissent. See id. at 1067-71 (Van Graafeiland, J., dissenting). In fact, the Second Circuit has since read the panel's decision in Rossillo very narrowly. See United States v. Lora, 895 F.2d 878, 881 (2d Cir. 1990).

13

Three days after the Rule 11 hearing, Damon appeared in the Circuit Court of the City of Richmond and pleaded guilty to two additional counts of murder. At that hearing, the Circuit Court judge specifically found Damon's plea to be knowing and voluntary. Thereafter, Damon admitted during his debriefing with DEA agents that he had actually committed a total of fifteen murders. Tellingly, it was not until three months after the Rule 11 hearing -- at sentencing, when he learned that he would receive a life sentence -- that Damon suddenly asserted that he was not competent during the Rule 11 hearing.

As this Court recently noted, "it is essential to an orderly working of the criminal justice system that guilty pleas tendered and accepted in conformity with Rule 11 . . . be presumed final." United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995). Here, the district court conducted the Rule 11 hearing precisely as this Court required in Truglio. Accordingly, Damon's guilty plea should be treated as final.

II.

In sum, I believe that the district court properly ensured during the Rule 11 hearing that Damon's plea was freely and voluntarily entered. Accordingly, I would affirm.

14