**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HUEY JACQUE CARTER, AKA Baby Huey, AKA Reesio,
*Defendant-Appellant*.

No. 13-50164

D.C. No.
2:11-cr-00358-MMM-1

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
February 4, 2015—Pasadena, California

Filed July 28, 2015

Before: Michael J. Melloy,[*] Jay S. Bybee,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Melloy

---

[*] The Honorable Michael J. Melloy, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a criminal judgment in a case in which the defendant, who asserts he was under the influence of prescription drugs at the time he entered his guilty plea, contends that the district court, by insufficiently inquiring as to the effect of those drugs at the plea hearing, failed to fulfill its duty under Fed. R. Crim. P. 11(b) to ensure the defendant entered the plea knowingly and voluntarily.

The panel held that the scope of the district court's inquiry was sufficient to ensure that the defendant entered his plea knowingly and voluntarily, and it therefore did not commit a constitutional or procedural error.

### COUNSEL

Michael Tanaka (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

Max B. Shiner (argued), Assistant United States Attorney, Violent & Organized Crime Section; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division; André Birotte Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

MELLOY, Circuit Judge:

Defendant Huey Carter timely filed a direct appeal following a guilty plea. He asserts he was under the influence of prescription drugs at the time he entered his plea. Carter asks us to vacate the plea because he contends the district court insufficiently inquired as to the effect of those drugs at his plea hearing. Without a more searching inquiry, Carter argues, the district court failed to fulfill its duty under Federal Rule of Criminal Procedure 11(b) to ensure he entered the plea knowingly and voluntarily. Because the scope of the district court's inquiry was constitutionally and procedurally sufficient, we affirm.

I

Huey Carter sold crack cocaine to a confidential informant in December 2010. A grand jury returned an indictment in April 2011, charging Carter with distributing crack cocaine. Carter was arrested and arraigned in February 2012. He pleaded not guilty, and the court appointed a public defender to represent him.

A few weeks later, Carter asked the court to allow him to represent himself. A hearing on self-representation was set for March, but the parties stipulated to postponing the hearing date to April. At the April hearing, Carter explained he had attended school through the twelfth grade, represented himself in another case, and researched the law about self-representation. He specifically mentioned he wanted to

"exercise [his] *Faretta*[1] rights."  To ensure that Carter was competent to represent himself, the district court asked him about an allegation that his hearing had been postponed because he had been placed on suicide watch.  Carter denied the allegation.  Carter's public defender expressed no concerns about Carter's ability to carry out the basic tasks of representing himself.  The district court granted Carter's request to represent himself.  The district court nevertheless expressed concern about the suicide-watch issue and asked the government to look into it.

The government filed a report in May explaining Carter was insubordinate while in custody.  It was that insubordination, not suicide watch, that forced Carter to postpone the hearing.

Carter and the government eventually signed a plea agreement in August 2012.  In exchange for pleading guilty, the government agreed to dismiss an information regarding a prior drug conviction, effectively taking a ten-year mandatory-minimum sentence off the table.  In the plea agreement, the government explained the penalties, the elements of the offense, and the constitutional rights that Carter was waiving.  The agreement also included an appeal waiver, allowing Carter to appeal based only on the voluntariness of the guilty plea.

The district court held a plea hearing in September 2012. The district court asked about Carter's mental state.  Before administering the oath, the district court instructed Carter to tell the court if there was anything he did not understand. The district court asked Carter for his name, whether he

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

wanted to withdraw his initial plea, and for his new plea. It then administered the oath.

The district court asked Carter about his age and education. He responded, "Forty-two" and "Twelfth Grade," respectively. Carter stated he did not have a high school diploma and confirmed he was a United States citizen. The following exchange then took place regarding Carter's mental illness and medications:

>THE COURT: Have you recently been treated for any kind of mental illness or addiction to narcotics, Mr. Carter?
>
>MR. CARTER: Yes; mental illness.
>
>THE COURT: And are you taking any medication for that right now?
>
>MR. CARTER: Yes, ma'am.
>
>THE COURT: Can you tell me what kinds of medication you're taking?
>
>MR. CARTER: Seroquel and some depression pills.
>
>THE COURT: Are those affecting you in any way so it's hard for you to understand the

> things that I'm saying or the lawyer is saying?
>
> MR. CARTER:   No, ma'am.
>
> THE COURT:   Do you believe that you understand the purpose of the hearing we're having today?
>
> MR. CARTER:   Yes, ma'am.
>
> THE COURT:   What are you going to do today, sir?
>
> MR. CARTER:   Pleading guilty.
>
> THE COURT:   Okay.   The Court finds that Mr. Carter understands both the nature of the proceeding as well as the statements being made in the courtroom, and that he is in full possession of his faculties.

There was no objection to the district court's finding, and the district court continued with a normal plea colloquy. The district court explained to Carter the rights he was waiving, discussed the potential penalties, asked about the plea agreement, and provided details about sentencing. Carter appropriately responded to questions with either "Yes, ma'am" or "No, ma'am." The government explained the

elements of the crime and laid out the factual basis for the plea. The prosecutor explained that Carter agreed to sell drugs to an confidential informant, purchased drugs from a supplier, and then sold the informant over 50 grams of crack cocaine. The district court finished the colloquy, throughout which Carter continued to respond with either "Yes, ma'am" or "No, ma'am." At no point did Carter answer contrary to what was expected or indicate there was anything he did not understand. When the district court asked him whether he was "guilty or not guilty," Carter responded, "Guilty." The district court accepted the plea.

The district court sentenced Carter in March 2013. Carter neither moved to withdraw his guilty plea nor suggested to the court that he entered his plea involuntarily or unknowingly.

In April 2013, however, Carter filed a direct appeal, claiming that the district court failed to ensure that he entered his plea knowingly and voluntarily.

II

Carter contends the district court did not sufficiently inquire about the effects of medications on his mental state. Carter suggests that the alleged failure amounts to a Rule 11(b) violation and requires reversal. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993) (explaining that before a district court can accept a defendant's plea, it must ensure that the defendant is entering the plea knowingly and voluntarily).

Although we review de novo whether a defendant entered a plea knowingly and voluntarily, *United States v. Timbana*, 222 F.3d 688, 701 (9th Cir. 2000), we apply only plain error

review when a defendant appeals based on an unobjected-to Rule 11 procedural violation, *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

Carter fails to argue, in either his opening or reply brief, that he actually entered his plea involuntarily or unknowingly. He fails to point to any evidence to demonstrate the alleged involuntariness of his plea. Further, he does not explain how the medications at issue would have impacted his ability to enter a plea knowingly and voluntarily. Rather, the fighting issue is simply whether the district court erred by failing to undertake a sufficient inquiry "to ensure that the constitutional requisites [of voluntariness and knowingness] were met." At its core, the appeal presents a Rule 11 procedural question. And because Carter did not object, plain error review is appropriate.[2]

Under the plain error standard, we grant relief only if we find (1) there was error, (2) the error was plain, and (3) the error affected substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). Because we hold that the district court's inquiry here was constitutionally and procedurally sufficient, "there was no error, plain or otherwise." *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1095 (9th Cir. 2006). Accordingly, we need not reach the second and third prongs of the plain error analysis.

Under Federal Rule of Criminal Procedure 11(b), a district court has the duty to ensure "the defendant

---

[2] This conclusion also finds support in cases cited by Carter. *See, e.g.*, *United States v. Yang Chia Tien*, 720 F.3d 464, 469 (2d Cir. 2013) (applying plain error review to an unobjected-to Rule 11 claim); *United States v. Savinon-Acosta*, 232 F.3d 265, 268 (1st Cir. 2000) (same).

understands" the rights that he is giving up, the nature of the charge, the applicable penalty range, and the contours of the plea agreement. Rule 11 has two main purposes. First, it helps ensure a defendant is pleading guilty voluntarily. *McCarthy v. United States*, 394 U.S. 459, 465 (1969). Second, it helps the district court produce a complete record. *Id.* Carter alleges the district court erred by failing to ask more than just a few questions about his medications. No case from this court or Supreme Court is directly on point.

In a similar situation, however, this court addressed the requisite mental-state inquiry when a defendant with a known mental issue attempted to plead guilty. *Timbana*, 222 F.3d at 702–07. On the heels of a competency hearing where the district court found the defendant competent to stand trial, the defendant sought to enter a guilty plea. *Id.* at 692–93. A plea hearing occurred roughly a month and a half after the competency hearing, and the district court began by ensuring that the defendant remained competent. *Id.* at 693. The district court asked the defendant about his education, about any potentially mind-altering substances, and whether he understood the purpose of the plea hearing. *Id.* The district court asked both parties whether they had any additional qualms about the defendant's ability to understand the proceedings, and both parties responded that there were no new developments since the defendant's competency hearing. *Id.*

On appeal, the defendant contended that even if he had been competent to plead, his plea should nonetheless be vacated because the district court failed under Rule 11 to ensure that the defendant understood the factual basis for his plea. *Id.* at 704. He argued that the district court should have asked him "to state in his own words" what he had done,

pointing to several cases from our sister circuits supporting the proposition that the Rule 11 colloquy must be "broadened under certain circumstances." *Id.* at 704–05. The *Timbana* majority concluded that the inquiry conducted in this case satisfied the inquiry demanded by the cases cited, observing that the district court had not "ignore[d] evidence" that the defendant lacked understanding and had "conducted a searching inquiry." *Id.* at 707. It thus found no Rule 11 violation. *Id.*

Although *Timbana* considered the Rule 11 colloquy standard, that case did not deal with the precise question at issue here: whether a defendant's statement that he presently is or may be under the influence of medication triggers an expanded Rule 11 colloquy to ensure that the defendant is "knowingly and voluntarily" entering a guilty plea. We, like the majority in *Timbana*, look outside the Circuit for guidance. The First, Second, Third, Fourth, Seventh, Eighth, and Tenth Circuits have all addressed the issue before us. Every circuit that has considered the issue agrees the district court has some additional duty to follow up with the defendant upon learning the defendant is under the influence of some medication or substance.

But the depth of that inquiry is unclear. Surveying case law across the circuits, a few commonalities emerge. District courts should ask about the types of drugs and whether the medications are affecting the defendant's mental state. They need not (but are nonetheless encouraged to) inquire about the exact names or dosages of the medications. And, when determining whether defendants are competent, district courts are entitled to rely on their own observations of defendants, the defendants' answers throughout the proceeding (not just when discussing competency), and the defendants' medical

histories (or lack thereof). In general, appellate courts have vacated pleas only when the district court failed completely to engage in any meaningful follow-up with a defendant.

The Third Circuit first took up the question in 1987. *United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987). The Third Circuit held that when a district court is alerted to the possibility that a medication or other drug may cloud a defendant's judgment, the district court must inquire further to determine whether the defendant is entering his plea voluntarily and knowingly. *Id.* But the case failed to define the contours of the inquiry. *See id.* at 46–47. It held only that, after learning that the defendant had ingested drugs the previous evening, asking, "Do you understand what I have said to you?" is insufficient. *Id.* at 45–47. In 2007, the Third Circuit revisited the issue in a case where the defendant disclosed that he was presently seeing three mental-health professionals and he had taken "[t]wo Ativan" the morning of the plea hearing. *United States v. Lessner*, 498 F.3d 185, 193 (3d Cir. 2007). The district court asked if the medication "affect[ed the defendant's] ability to understand and appreciate what is taking place." *Id.* The defendant explained that he understood what was happening in the courtroom. *Id.* He further explained that the medication "puts [him] in perspective" and "calms [him] down" so he can "deal with the circumstances." *Id.* The court concluded that the district court "sufficiently discharged its duty under Rule 11 to inquire into [defendant's] capacity to enter a knowing and voluntary plea and, in fact, found she did just that." *Id.* at 196.

In 1988, the Second Circuit adopted *Cole*'s holding. *United States v. Rossillo*, 853 F.2d 1062, 1066–67 (2d Cir. 1988). The Second Circuit vacated a guilty plea where the

district court made no inquiry into the defendant's state of mind despite the defendant admitting he was on medication. *Id.* In 2013, the Second Circuit reaffirmed its holding in *Rosillo*. It vacated a guilty plea after the district court learned the defendant was on medication but failed "to ascertain whether [the medications] could impact his ability to proceed." *United States v. Yang Chia Tien*, 720 F.3d 464, 470 (2d Cir. 2013). "[O]nce the district court learned that [the defendant] was on a series of medications, there should have been further inquiry into the specific medicines and their side effects." *Id.* The Second Circuit explained that, at a minimum, the district court must "ask about the effects of [the] medications, and [] conduct an inquiry into the defendant's state of mind." *Id.* at 471.

In 1991, the First Circuit suggested the best practice would be to ask about the types, effects, and dosages of medications. *See United States v. Parra-Ibanez*, 936 F.2d 588, 596 (1st Cir. 1991). Then, in 1999, the First Circuit affirmed a plea where the defendant disclosed he had taken Xanax and Ativan and where the district court asked why the defendant took the medications, when the defendant last took the medications, and whether the medications "in any way affected [the defendant's] capability or ability to understand today's proceedings." *Miranda-Gonzalez v. United States*, 181 F.3d 164, 166 (1st Cir. 1999). The First Circuit found this inquiry as well as the absence of any "warning flags" in the defendant's answers or behavior during the colloquy was sufficient to affirm the plea. *Id.* at 167.

In 2000, the First Circuit reaffirmed what it considered the best practice—"to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, and (so far as possible) the purpose and

consequences of the drugs in question." *United States v. Savinon-Acosta*, 232 F.3d 265, 268 (1st Cir. 2000). It clarified, however, that "there is certainly no settled rule that a hearing cannot proceed unless precise names and quantities of drugs have been identified," and the district court can rely on "practical judgments" to determine the likely or actual effects of a particular drug on the voluntariness of the plea. *Id.* at 268–69. And it also stated that above all, "[t]he critical question is whether the drugs—if they have a capacity to impair the defendant's ability to plead—have in fact done so on this occasion." *Id.* at 268. To conclude that the plea is voluntary, district courts may rely on the defendant's own assurances, the defendant's performance during the plea hearing, and any prior medical history. *Id.* at 269.

Since *Savinon-Acosta*, the First Circuit has distinguished *Parra-Ibanez* from other cases because the district court in *Parra-Ibanez* "failed to follow up with any question whatsoever about whether the defendant's medication affected his competence," and the Circuit has held that the district court is not *required* to seek out the name and dosage of every medication. *See United States v. Kenney*, 756 F.3d 36, 46–47 (1st Cir. 2014) (finding guilty plea proper when the district court received assurances that the defendant could understand the proceeding despite the court not asking "the name and dosage of each medication").

The Fourth Circuit has held that "when an answer raises questions about the defendant's state of mind, the court must broaden its inquiry to satisfy itself that the plea is being made knowingly and voluntarily." *United States v. Damon*, 191 F.3d 561, 565 (4th Cir. 1999). In *Damon*, the Fourth Circuit vacated a plea when the district court learned that the defendant was under the influence of medication but failed to

determine what, if any, effect the medication had on the defendant. *Id.* It remanded the case to allow the district court to determine whether the medication's potential effects could have affected the defendant's plea. *Id.* at 566.

The Tenth Circuit has not expressly held that a district court must ask follow-up questions when a defendant reveals that he is under the influence of medication. *See United States v. Browning*, 61 F.3d 752, 753–54 (10th Cir. 1995). In *Browning*, however, the Court found no Rule 11 violation after the district court "inquired as to whether the medication had in any way affected [the defendant's] ability to think or comprehend" and the defendant "assured the court [the medication] had not [affected his ability to think or comprehend]," the district court questioned the defendant's counsel if he had any qualms about the defendant's mental state, the district court clarified the purposes of the medication, and the district court noted that the defendant had not previously been treated for mental illness. *Id.* at 754. This information along with the district court's "own observations" led the district court to find the defendant competent. *Id.* The Tenth Circuit also put some onus on the defendant to demonstrate the alleged intoxicating effects of the medication. It held that, even if the district court "'did not probe deep enough,'" the defendant was not entitled to reversal because "the complete absence of evidence that his ability to enter a knowing and voluntary plea was affected by the medications renders any deficiency harmless." *Id.*

The Eighth Circuit applies a somewhat more relaxed requirement. In *United States v. Dalman*, the district court asked the defendant if he was under the influence of any medication, to which the defendant responded he was taking four different types of medications but could not remember

the specific names of the drugs.  994 F.2d 537, 538 (8th Cir. 1993).  When asked whether he could understand what was going on "right now," the defendant responded, "Yes."  *Id.* At no time during the change of plea hearing did the defendant demonstrate that he might have been confused or that his mental condition was otherwise affected.  *Id.*  The Eighth Circuit found this inquiry, along with the defendant's "performance during the plea hearing," was sufficient to uphold the plea.  *Id.* at 538–39.  The Court noted that Dalman "simply . . . made no showing that the medications so affected him at the time of his plea hearing as to make him incapable of knowingly and intelligently entering his plea of guilty" and that his plea performance was inconsistent with his "after-the-fact claim that he did not understand the proceedings."  *Id.* at 539.

The Seventh Circuit specifically rejected the necessity to inquire "how *much* of each drug" the defendant ingested and "what effects the medications . . . might have [had] on [the defendant's] clear-headedness."  *United States v. Hardimon*, 700 F.3d 940, 942 (7th Cir. 2012) (internal quotation marks omitted).  It explained that a district court's questions regarding whether the defendant could think clearly during the plea hearing were sufficient.  *Id.*  The Court recognized that mere coherence may not be conclusive, but it also recognized that "[a] combination of deeply confused or clouded thinking with coherent speech and a normal demeanor is rare."  *Id.* at 943.  It cautioned district courts not to assume simply because a defendant is taking a medication that he cannot "think straight."  *Id.* at 944.  It also placed the onus on the defendant to show a debilitating effect from the medication; if a defendant wants to withdraw his plea, "the defendant needs to present the affidavit of a qualified psychiatrist" in the absence of clear incoherence.  *Id.*

These cases all suggest the same conclusion—if a district court learns that a defendant is under the influence of some medication, it has a duty to determine, at a minimum, what type of drug the defendant has taken and whether the drug is affecting the defendant's mental state. When determining whether there is any effect on defendants, district courts may rely on defendants' answers to their inquiries as well as their observations of defendants during the hearing. *See Miranda-Gonzalez*, 181 F.3d at 167; *Savinon-Acosta*, 232 F.3d at 269; *Browning*, 61 F.3d at 753–54; *Dalman*, 994 F.2d at 539. District courts may also consider a defendant's medical history, including the defendant's history of mental illness. *See Savinon-Acosta*, 232 F.3d at 269; *Browning*, 61 F.3d at 753–54; *Parra-Ibanez*, 936 F.2d at 596 n.16. And while it may be helpful to look at the dosage and specific names of medications, this is not required. *See Kenney*, 756 F.3d at 46–47; *Savinon-Acosta*, 232 F.3d at 269.

Indeed, the complete failure to undertake any additional inquiry into the mental state of the defendant, after the defendant has alerted the court of medication, will not satisfy Rule 11's demands. *See Cole*, 813 F.2d at 46–47 (reversing when, after learning the defendant had taken drugs the previous evening, the district court asked only, "Do you understand what I have said to you?" and did not ask about the effect of the drugs); *Rosillo*, 853 F.2d at 1066 (reversing where there was no on-the-record determination whether the defendant's ability to understand the proceeding was affected by the influence of any medication); *Parra-Ibanez*, 936 F.2d at 595–96 (reversing where the defendant revealed he took three medications and the district court posed no questions as to whether those medications affected the defendant's comprehension); *Damon*, 191 F.3d at 565 (remanding for harmless-error analysis where district court failed to ask

about any potential effect of medication after it was "put on direct notice that [defendant] could be under the influence of a drug while entering his plea").

These cases are persuasive and lead us to find that the district court in the present case did not err.  Here, the district court asked Carter mental-state-related questions after Carter revealed he was under the influence of medication.  It asked Carter the type of medication.  Carter responded, "Seroquel and some depression pills."  It asked if those drugs were "affecting [Carter] in any way so it's hard for [him] to understand the things that [the court] or the lawyer is saying," and Carter responded, "No, ma'am."  The district court continued its inquiry, asking whether Carter "underst[ood] the purpose of the hearing."  Carter responded affirmatively.  To ensure that Carter understood, the district court then asked Carter to tell it what was the purpose of the hearing.  Carter responded, "Pleading guilty."

It was only after this inquiry that the district court declared Carter competent to proceed with the guilty plea. Carter's performance during the rest of the plea hearing also supports the conclusion of competency.  Carter responded appropriately to the questions posed by the district court. Although Carter's responses generally consisted simply of "Yes, ma'am" or "No, ma'am," Carter's answers were responsive to the questions asked and were consistent with affirming understanding or indicating he had no questions for the court.  To the extent Carter now argues that the alleged suicide watch should have forced the district court to undertake a more thorough inquiry, the record belies the argument.  Carter disavowed any threat of suicide, and the government submitted evidence showing that the reason for

postponing the hearing date was Carter's insubordination, not an alleged placement on suicide watch.

Accordingly, we conclude that the district court's inquiry was sufficient to ensure that Carter entered his plea knowingly and voluntarily, and it therefore did not commit a constitutional or procedural error. In reaching this conclusion, we join the majority of circuits that have considered this issue.[3]

**AFFIRMED.**

---

[3] Indeed, the closest Carter comes to pointing to contrary authority is in suggesting that the district court's inquiry would fail under the First Circuit's best practices—that a district court should determine the name and dosage of any medications. *See Savinon-Acosta*, 232 F.3d at 268. But as the First Circuit has subsequently held, this is not required. *Kenney*, 756 F.3d at 46–47.