In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1821, 11-2515

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN M. HARDIMON,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 3:10-cr-30170-MJR-1—**Michael J. Reagan**, *Judge*.

ARGUED OCTOBER 2, 2012—DECIDED NOVEMBER 7, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  The defendant, a chiropractor, pleaded guilty to defrauding health insurers and to money laundering and was sentenced to 70 months in prison (the bottom of the applicable guidelines range) and to pay restitution of almost $2 million. In his guilty plea he waived his right to appeal; but shortly after pleading guilty he moved to retract the plea on

the ground that he had been taking psychotropic drugs that had clouded his mind and made his plea involuntary. The judge denied the motion, and the defendant's first appeal attacks the denial as erroneous. His second appeal, which is from the part of the sentence that orders restitution, is blocked by the appeal waiver if we uphold the judge's ruling with respect to the guilty plea. The first appeal is not blocked because the waiver was part of the guilty plea agreement that the appeal seeks to set aside as having been involuntary. If the plea is set aside, the entire sentence will have to be vacated, thus including the order to pay restitution. If the plea is not set aside, the entire sentence will stand. So in no event will we have to consider the merits of the restitution order in this appellate proceeding.

At the guilty-plea hearing the judge asked the defendant whether he was "currently under the influence of any drugs, medicine, or alcohol," and the defendant answered: "prescription medications." The judge asked him whether "any of these medications affect your ability to think clearly," and the defendant answered "no," and also "no" to whether he had been "treated in the past 60 days for any addictions to drugs, medicine or alcohol of any kind." But he answered "yes" to the next question—whether he'd been treated in the past 60 days for "any mental disorders, mental defects, or mental problems." The judge asked him to explain, and he replied that he was taking medicines for "high anxiety, depression, adult attention hyperactivity disorder, and depression." At "therapeutic level?" the judge asked, and the defendant said "I believe so, yes."

The judge asked the defendant whether he thought the drugs were working and he said, "I believe the ADHD [attention deficit hyperactivity disorder—the disorder that he called 'adult attention hyperactivity disorder'] medicine makes me concentrate more. It does cause quite a bit of anxiety, so they have given me something else to help the anxiety a little bit, but it [the ADHD medicine] definitely increases my alertness." In answer to further questions the defendant assured the judge that he was "thinking clearly," "capable of making decisions, serious decisions," such as pleading guilty to the 15-count information that the government had filed against him, and that he had no "physical conditions or problems that affect" his "ability to think clearly." The judge then proceeded with the usual questions in a plea hearing, received the usual answers, and accepted the plea of guilty.

Six weeks later the defendant moved to withdraw the plea, explaining that he had been taking Prozac to treat his mental illnesses but that a week after the plea hearing his primary-care physician had switched him to Lexapro and "almost immediately" he experienced "increased alertness, awareness and attentiveness" and realized that at the plea hearing he had been "incapable of understanding the true nature of the charges against him . . . and the consequences of his plea."

The district court conducted an evidentiary hearing. The defendant submitted the abstract of a medical study which states that Lexapro may be a more effective treatment for major depression than Prozac. Andrea Cipriani et al., "Escitalopram Versus Other Antidepressive

Agents for Depression," *The Cochrane Library*, Oct. 7, 2009, http://onlinelibrary.wiley.com/doi/10.1002/14651858. CD006532.pub2/abstract (all web sites cited in this opinion were visited on Nov. 2, 2012). He also submitted an email from his psychiatrist saying that certain rare side effects of Prozac, including hallucinations, could affect a person's "ability to think and make decisions." Hallucinations are also a possible, though again a rare, side effect of Lexapro. "Drugs & Medications—Lexapro," *WebMD*, www.webmd.com/drugs/drug-63990-Lexapro.aspx?pagenumber=6. The psychiatrist noted that in the past the defendant had reported having a "better response to Lexapro than Prozac . . . in terms of . . . more clear thoughts." This is possible because although the drugs are very similar (both are SSRIs— selective serotonin reuptake inhibitors), people may react somewhat differently to them. Harvard Health Publications, "What Are The Real Risks of Antidepressants?" www. health.harvard.edu/newsweek/What_are_the_real_risks_ of_antidepressants.htm; Mayo Clinic, "Selective Serotonin Reuptake Inhibitors (SSRIs)," www.mayoclinic.com/health/ ssris/MH00066.

The judge denied the motion to withdraw the guilty plea, in part because the defendant had presented no evidence that switching from Prozac to Lexapro could have the dramatic effects he claimed it had, and in part because at the plea hearing he had been alert and responsive and exhibited no signs of confusion. He certainly had not been hallucinating.

He argues that the judge should have inquired more deeply at the plea hearing into the drugs he was taking—

should have asked him how *much* of each drug he was taking and what "effects the medications [as distinct from the underlying mental illnesses] might have on [his] clear-headedness." We don't think that such an inquiry was required. *United States v. Weathington*, 507 F.3d 1068, 1073-74 (7th Cir. 2007); *United States v. Rollins*, 552 F.3d 739, 741-42 (8th Cir. 2009); *United States v. Lessner*, 498 F.3d 185, 193-96 (3d Cir. 2007); *United States v. Savinon-Acosta*, 232 F.3d 265, 269 (1st Cir. 2000); *Miranda-Gonzalez v. United States*, 181 F.3d 164 (1st Cir. 1999). The judge had already asked him whether he could think clearly, and he had said he could, which implies that he didn't think his medications were affecting his ability to think clearly. Not being a psychiatrist, the judge could not use dosage information to infer inability to think clearly. He would have had to require the attendance of the defendant's psychiatrist at the plea hearing and question him about the dosages and their actual and possible consequences. If we imposed such a requirement we might create a situation in which a significant fraction of criminal defendants are placed in detention for psychiatric evaluation before being allowed to plead guilty.

A judge is required to investigate the defendant's mental state if there are indications at the plea hearing or later of an impairment that made him incompetent to plead. The fact that a defendant seems competent when answering the judge's questions at the plea hearing should not be conclusive; mental diseases, or mental impairments brought on by psychotropic drugs, might alter the premises of a person's thinking rather than

the articulation of his thoughts or his outward appearance or manner. See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 329 (4th ed. 2000) (diagnostic criteria for "delusional disorder" include delusion lasting at least one month but also that "apart from the impact of the delusion(s) or its ramifications, functioning is not markedly impaired and behavior is not obviously odd or bizarre"); Gerard H. H. Benthem et al., "Teaching Psychiatric Diagnostics to General Practitioners: Educational Methods and Their Perceived Efficacy," 31 *Medical Teacher* e279 (2009); Abdel-hamid Afana et al., "The Ability of General Practitioners to Detect Mental Disorders Among Primary Care Patients in a Stressful Environment: Gaza Strip," 24 *J. Pub. Health Medicine* 326 (2002). General practitioners struggle to detect psychiatric disorders. Benthem et al., *supra*. Even in a discussion with someone who believes he's Napoleon, you might find his speech lucid and (given the irrational premise) logical, and his affect normal. See Jeanette Hewitt, "Schizophrenia, Mental Capacity, and Rational Suicide," 31 *Theoretical Medicine & Bioethics* 63, 67-68 (2010).

A combination of deeply confused or clouded thinking with coherent speech and a normal demeanor is rare, however. "Delusional Disorder," in American Psychiatric Association, *supra*, at 326. (See also the diagnostic criteria for delusion disorder, quoted above.) With the Napoleon example we enter the realm of schizophrenia. Mania and particularly schizophrenia do affect a patient's ability to perceive reality. "Schizophrenia," *PubMed Health*, Feb. 13. 2012, www.ncbi.nlm.nih.gov/pubmedhealth/

PMH0001925/; "Mania," *Wikipedia*, http://en.wikipedia.org/ wiki/Mania. But as in our Napoleon example, the defendant's distorted thinking is likely to be apparent; "disorganized speech (e.g. frequent derailment or incoherence)" and "grossly disorganized or catatonic behavior" are typical symptoms of schizophrenia. "Diagnostic Criteria for Schizophrenia," in American Psychiatric Association, *supra*, at 312. Our defendant is neither manic nor schizophrenic; and depression and anxiety do not present the same risk of disordered cognition as mania or schizophrenia does, see "Anxiety," *Wikipedia*, http://en.wikipedia.org/ wiki/Anxiety; Anxiety and Depression Association of America, "Depression," http://www.adaa.org/ understanding-anxiety/depression, though they present some risk of it, depression especially. See Terry A. Maroney, "Emotional Competence, 'Rational Understanding,' and the Criminal Defendant," 43 *Am. Crim. L. Rev.* 1375, 1410-16 (2006).

The defendant's focus is in any event on the drugs he took rather than on the conditions for which the drugs were prescribed. Such drugs can produce disordered thinking, "Prozac Medication Guide," www. prozac.com/Pages/index.aspx; Drugs.com, "Lexapro Side Effects," www.drugs.com/sfx/lexapro-side-effects. html; PubMed Health, "Dextroamphetamine and Amphetamine," www.ncbi.nlm.nih.gov/pubmedhealth/ PMH0000166/ (medication for ADHD), though the principal mental side effect of SSRIs is suicidal thinking.

These drugs are taken by millions of people, and it can't just be assumed from the fact that someone is

taking them that he can't think straight. To make a case for being permitted to withdraw his guilty plea when the judge's inquiries at the plea hearing had been adequate and had revealed no impairment of the defendant's ability to think, the defendant needs to present the affidavit of a qualified psychiatrist. Cf. *United States v. Jones*, 381 F.3d 615, 618-19 (7th Cir. 2004); *United States v. Cruz*, 643 F.3d 639, 643 (8th Cir. 2011). Such an affidavit in this case might have described the possible effects of Prozac and Lexapro in the dosages prescribed for the defendant and any indications that his ability to think had been materially impaired by the Prozac, which he claims to have realized when he switched to Lexapro and his mind cleared. Apparently the defendant's lawyer could find no psychiatrist willing to provide an affidavit or testimony that would lay a factual basis for a finding of incompetence to plead.

So the motion to vacate the guilty plea was properly denied, the plea therefore stands, the waiver in the plea bars the second appeal, and the judgment is therefore

AFFIRMED.