In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3363

UNITED STATES OF AMERICA,

*Plaintiff- Appellee,*

*v.*

CAROL Y. WOODARD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 08-CR-126 — **Larry J. McKinney**, *Judge*.

ARGUED OCTOBER 30, 2013 — DECIDED MARCH 5, 2014

Before EASTERBROOK, RIPPLE, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Defendant Carol Woodard, the managing director of a non-profit organization, was indicted on one count of health care fraud for collecting $8.9 million from Medicaid based on her submissions of phony healthcare claims. As the first trial date approached, Woodard filed the first of many motions to change counsel. After the district court appointed a third attorney, it sua sponte ordered Woodard to undergo a competency examina-

tion because it felt that she might not understand the nature of the proceedings against her. After a doctor concluded that Woodard was competent to stand trial because she knew and understood the charges against her and was able to assist in her defense, the court found Woodard legally competent to stand trial. Nearly two years later, after several more delays and new attorneys, Woodard asked for a second competency evaluation, which the court denied. Woodard pled guilty and was sentenced to 80 months' imprisonment.

On appeal, Woodard argues that the district court abused its discretion by not ordering a second competency evaluation. Because the district court reached a reasonable conclusion after it reviewed a previous psychological evaluation, considered the advice of two mental health professionals, and considered Woodard's interactions with her attorney, we conclude that the district court did not abuse its discretion. In addition, although Woodard argues that she did not knowingly and voluntarily plead guilty during her Rule 11 colloquy, a review of the record shows that she did and that no red flags were raised that would alert the court to the contrary. Finally, we agree with her last argument that the district court violated the *Ex Post Facto* Clause at sentencing by sentencing her under the wrong version of the Sentencing Guidelines. Therefore, we remand this case for resentencing, but affirm the district court's judgment in all other respects.

## I. BACKGROUND

Carol Woodard was the operator and managing director of a non-profit grant organization, Gideon's Gate, which provided educational and tutoring services to children of indigent families. In January 2006, the Department of Education was not satisfied with Gideon's performance and

stopped providing funding and services. In order to make up for the loss of funding, Woodard enrolled Gideon as an authorized Indiana Medicaid provider that could provide outpatient mental health services. But, she provided no medical services and continued to operate it as an educational service provider.

In order to fraudulently bill Medicaid, from January 2006 through December 2007, Woodard illegally obtained clients' personal information from a welfare-to-work provider that was operated by a friend, Rita Nigaya. Nigaya gave Woodard access to her clients' files as repayment for a loan from Woodard. Without informing Nigaya's clients, Woodard used their social security and Medicaid numbers to bill Medicaid for services never provided. In total, 2,437 false claims were submitted to Medicaid for $8.9 million worth of phony services to 378 patients. After an investigation, a federal grand jury indicted Woodard on one count of health care fraud, in violation of 18 U.S.C. § 1347.

After several delays, a bench trial was scheduled for July 27, 2009. Four days before the trial, Woodard's counsel moved to withdraw because of a fundamental difference of opinion regarding how the trial should be conducted. The district court granted his motion and a second attorney was appointed. Woodard not only disagreed with her second counsel regarding trial strategy, but accused him of felonious conduct. On March 23, 2010, the district court appointed a third counsel, and sua sponte ordered Woodard to undergo a psychiatric evaluation because of concerns about her "inability to understand exactly what the charges [were], … [her] inability to understand how to proceed," and

her inability to "realistically look at the circumstances before her."

On May 18, 2010, Woodard appeared at a competency examination, but she refused to participate, so a few months later the district court again ordered her examination. On September 28, 2010, Dr. Philip M. Coons evaluated Woodard, diagnosed her with "multiple adjustment reactions with depressed mood, in remission," and concluded that she was competent to stand trial because she knew and understood the charges against her and was able to assist in her defense. On January 13, 2011, the district court held a competency hearing and found Woodard competent to stand trial.

On June 6, 2012, five days before trial, Woodard voluntarily committed herself to Community North Hospital for a psychological evaluation and inpatient treatment. Community North diagnosed Woodard with major depressive disorder with psychiatric episodes and prescribed medication to help her control the symptoms of her illness. On June 8, 2012, Woodard's attorney filed, and the court denied, a motion for a continuance based on her hospital admission.

On June 11, 2012, the district court held a status hearing for an update on how Woodard's commitment affected the trial. Because Woodard was still committed to the mental health unit, she was unable to attend the hearing. Her counsel asked to postpone the trial because Woodard was heavily medicated and her treating doctor at Community North felt that she was not "clinically ready for discharge."

The next day, the district court considered Woodard's motion for a second competency examination and the testi-

mony of two doctors. The defense witness, Dr. Elizabeth Cunningham, a forensic psychiatrist, had examined and evaluated Woodard at the hospital's request. She concluded that Woodard's new medication would not affect her factual understanding of the legal proceedings because even after taking the medication Woodard was oriented, able to converse with people, and was not over-sedated. However, she also stated that she was concerned with Woodard's ability to assist her defense counsel and later faxed a letter to the court stating that she felt that Woodard lacked the ability to assist counsel in her defense. The government's expert, Dr. Celestine DeTrana, reviewed Woodard's treatment records from Community North Hospital, visitation records from outpatient facilities, Dr. Coons's competency determination, and several court documents. Even though she did not review Dr. Cunningham's evaluation, she, too, concluded that none of Woodard's new medications would affect her understanding of the legal proceedings. Although Dr. Cunningham felt that Woodard lacked the ability to assist counsel in her defense, Dr. DeTrana thought that she could. After reviewing Dr. Coons's report and listening to the testimony of Drs. Cunningham and DeTrana, the court found no reasonable grounds to order another full-blown evaluation, denied Woodard's motion, and found that Woodard was competent to stand trial. So trial was reset for July 16, 2012.

Five days before trial, on July 11, 2012, Woodard filed another motion to continue and to review her competency. She presented a letter from Community North Hospital that stated that she was not mentally stable enough to adequately assist or participate in her defense and that if Woodard attempted to sign herself out of the hospital, it would seek a 78-hour commitment order. On July 12, 2012, relying on its

decision from its previous ruling, Woodard's assistance in her defense for four years, and the fact that she took several notes at the recent deposition of a witness who was going to testify at her trial, the court denied the motion. Following the court's denial of her motion, Woodard filed a petition to enter a plea of guilty.

Because Judge McKinney was out of town, she pled guilty before Judge Lawrence. During the Rule 11 colloquy, Woodard explained that she finished four years of college and took some graduate courses, commented on her communication with counsel, and expressed her current understanding of the plea agreement and indictment. In addition, Woodard responded that her medication did not affect her ability to understand what was going on. The court also asked her if she suffered from a mental condition that impaired her ability to understand the court's proceedings. Woodard responded that she understood what was happening and after the colloquy was over, the court accepted her guilty plea.

On October 5, 2012, Judge McKinney sentenced Woodard to 80 months' imprisonment, utilizing the 2011 version of the Sentencing Guidelines. Relying on then-controlling Seventh Circuit case law, the court applied the Sentencing Guidelines range of 97 to 121 months. Had the court applied the Guidelines that were in effect at the time Woodard committed fraud, her Guidelines range sentence would have been between 51 and 63 months. After sentencing, Woodard moved to withdraw her guilty plea, the court denied the motion and this appeal followed.

## II. ANALYSIS

Woodard makes three arguments. First, she argues that the district court abused its discretion by not ordering a second competency evaluation. Second, she contends that she did not knowingly and voluntarily plead guilty during her Rule 11 colloquy. Finally, she asserts that the district court violated the *Ex Post Facto* Clause at sentencing. We address each argument below.

### A.  No Abuse of Discretion in Denial of Second Competency Evaluation Request

Woodard argues that the district court abused its discretion when it refused to order a second competency evaluation in July of 2012 despite evidence that her mental health continued to deteriorate in the weeks preceding her guilty plea. Woodard relies on: (1) the fact that her competency was questioned once before in 2010; (2) her hospital records; and (3) evidence of "irrational behavior" to support her claim that there existed a bona fide doubt as to her competency to stand trial. We disagree.

This court reviews the district court's decision not to order a second competency evaluation for abuse of discretion. *United States v. Andrews*, 469 F.3d 1121 (7th Cir. 2006). A district court is not required to order an examination or a competency hearing unless there is a bona fide doubt that arises as to a defendant's competency before trial. *Id*. The court uses an objective test to determine whether a reasonable doubt was raised. *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991).

Woodard cannot successfully claim that because her competency was questioned in 2010 that serious doubts

arose as to her competency in 2012. The test for whether a defendant is competent to stand trial focuses on "whether [the defendant] has sufficient *present ability* to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Ross*, 501 F.3d 702, 712 (7th Cir. 2004) (quoting *Dusky v. United States*, 362 U.S. 402, 403 (1960)) (emphasis added). Here, Woodard was deemed competent by a doctor in 2010, and, based on that finding, a court found her legally competent to stand trial.

The key to our analysis is whether the defendant currently suffers, at the time the motion for a competency evaluation is made, a malady that would render the defendant incompetent, not whether a malady affected the defendant years in the past. Simply because Woodard had a court-ordered competency evaluation in 2010 and was diagnosed with a mental illness is not evidence that she was unable to assist her attorney in 2012. Woodard's argument is further weakened by the fact that she was deemed both medically and legally competent in 2010 to stand trial in spite of her malady. Dr. Coons, who did her evaluation, believed that she was both competent to stand trial since she knew and understood the charges against her, and was able to assist in her defense. The court agreed so her 2010 evaluation has little bearing on her competency motion filed in 2012.

Second, Woodard maintains that her mental health declined after her first competency evaluation in September of 2010 was completed. She argues that her subsequent medical records raised doubt as to her competency, but the record does not support Woodard's argument. The court was con-

cerned with Woodard's mental health, so it asked two mental health professionals who recently evaluated Woodard, or her medical files, to comment on Woodard's mental state. The court asked them to determine: (1) if the medication Woodard was recently prescribed prevented her from understanding court proceedings; and (2) whether her illness or medication prevented her from assisting in her defense. As to the first question, both doctors agreed that Woodard was able to understand the court's proceedings. Where they differed was on the second question as to whether Woodard was able to assist in her own defense.

Drs. Cunningham and DeTrana's evaluations went a long way in eliminating any doubt that was raised by Woodard's voluntary commitment. While the two doctors disagreed about whether Woodard's paranoia prevented her from assisting her attorney, the court felt that the important issue was whether Woodard's paranoia was so great that it interfered with her ability to assist in her defense. While a close call, the court ultimately chose to follow Dr. DeTrana's opinion because Dr. Cunningham said that although Woodard's paranoia was a concern, she did not state that it was to such a degree that Woodard would not be able to participate in her own defense.

Nearly a month after the court denied her request for a second competency evaluation, Woodard made another request for a second competency evaluation, arguing once again that her medication prevented her from participating in her defense. Yet, the record shows that for almost four years, Woodard interacted with her attorneys and participated in her defense. In fact, some of her former attorneys might argue that she participated too much. Even after she

was provided medication for her paranoia, and claims that she was unable to assist in her defense because of her medication, she still appeared to assist her attorney. On June 12, while Woodard was on medication that allegedly prevented her from effectively assisting counsel, the government observed Woodard taking several notes at the deposition of a witness that was going to testify at her trial. Moreover, she appeared to be conversing with, and being helpful to, her counsel. The government argues, and Woodard does not contest, that this demonstrates that she was capable of assisting her counsel. The June 12 episode is significant evidence that shows that Woodard was capable of assisting in her own defense.

Woodard also points to her "irrational behavior" of continuously firing her counsel, filing pro se motions that did not appear to be relevant to her case, and checking herself into a mental health unit as evidence sufficient to raise doubt that Woodard was competent to stand trial. While such actions could bear on whether Woodard was incompetent, they are not dispositive. This court has said that "the articulation of unusual legal beliefs is a far cry from incompetence." *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008). "Persons of unquestioned competence have espoused ludicrous legal positions." *Id*. Although it is clear that Woodard suffers from mental illness, the record does not conclusively show that her mental illness prevented her from fully participating in her defense preparation. Therefore, we believe that the court's conclusion is reasonable and that no bona fide doubt was raised to suggest that Woodard should have received a second competency evaluation.

### B. Woodard's Guilty Plea Was Knowing and Voluntary

Woodard argues that her guilty plea was not knowing and voluntary because the district court failed to appropriately address her competency to plead guilty at the change of plea hearing and that she preserved the issue for appeal when she raised the issue with the district court after sentencing. However, the government counters that we should review the issue for plain error since Woodard did not timely raise the issue below.

While Woodard filed a motion to withdraw her guilty plea after sentencing, she did not do so before she filed her notice of appeal. When she filed her notice of appeal, this court had jurisdiction over her case and the district court lost its ability to vacate her judgment. "There is a general rule that an appeal suspends the power of the court below to proceed further in the cause, except to take such steps as will assist the appellate court in its determination." *United States v. O'Connor*, 874 F.2d 483, 489 (7th Cir. 1989) (quoting *United States v. Bastanipour*, 697 F.2d 170, 173 (7th Cir. 1982)). Because Woodard did not seek to withdraw her guilty plea prior to reaching this court, she did not properly raise the issue below. We review Woodard's claim of a Rule 11 violation for plain error. *See United States v. Vonn*, 535 U.S. 55, 63 (2002); *United States v. Burnside*, 588 F.3d 511, 520 (7th Cir. 2009). Under this standard, we review Woodard's claim to determine whether: (1) an error has occurred; (2) it was plain; (3) it affected Woodard's substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See Burnside*, 588 F.3d at 520.

To ensure that guilty pleas are knowing and voluntary, a district court must determine that the defendant under-

stands her rights before pleading guilty. Fed. R. Crim. P. 11(c). The validity of a Rule 11 colloquy is based on the totality of the circumstances. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010); *United States v. Blalock*, 321 F.3d 686, 688 (7th Cir. 2003). To determine whether the defendant understands the nature of a charge, "we consider: (1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the judge's inquiry during the plea hearing and the defendant's statements; and (5) the evidence proffered by the government." *Blalock*, 321 F.3d at 688-89.

Judge Lawrence conducted a thorough and valid Rule 11 colloquy. Before any questioning began, the court told her that she was allowed to take "as much time as necessary" to discuss the procedure with her attorney throughout the hearing. The court then asked her background questions about her personal and educational background. Woodard explained she was 44 years old, graduated from high school, finished four years of college, and took post-graduate courses. To questions regarding whether Woodard and her attorney reviewed the petition to enter a plea of guilty, the plea agreement, and the indictment, she responded that she read, understood, and certified the documents. The court then reviewed each document with her and asked a series of questions designed to ensure that Woodard was aware of the charge against her, that she understood the consequences of the charges, and that she was voluntarily pleading guilty.

Woodard argues that the court "ignored" red flags of her incompetency to voluntarily and knowingly plead guilty, such as her mental health diagnosis, her prescription medi-

cation and their impact on her ability to plead guilty. But, the record does not support Woodard's argument. The court also asked Woodard if she was taking medication that she felt interfered with her ability to understand the legal process. She responded that she felt that her medication did not affect her ability to understand what was going on. Finally, the court asked whether any medical, mental, physical or emotional conditions interfered with her ability to participate or understand the court's proceedings. Woodard again answered that she understood what was going on.

It is true that simply answering the court's question is not in and of itself dispositive that Woodard was competent to plead guilty. *See United States v. Hardimon*, 700 F.3d 940, 943 (7th Cir. 2012) (stating that "the fact that a defendant seems competent when answering the court's questions at the plea hearing should not be conclusive as to whether the defendant is competent to plead; mental diseases, or mental impairments brought on by psychotropic drugs, might alter the premises of a person's thinking rather than the articulation of his thoughts or his outward appearance or manner"). Here, the court's questions and observations of Woodard while she answered its questions regarding her medical condition clearly demonstrate that the court did not "ignore" Woodard's medical and mental state.

Finally, Woodard points to a moment when she was momentarily confused by a question the judge asked her. Woodard was asked whether she suffered from a condition that interfered with her ability to understand and participate in the proceeding. Woodard did not understand the question the judge asked her and needed her attorney to rephrase the question so that she could understand it. Woodard argues

that this was a red flag that the court should have noted. However, a defendant's reliance on counsel's explanation does not necessarily vitiate the validity of the Rule 11 colloquy. *See United States v. Hernandez*, 731 F.3d 666, 671 (7th Cir. 2013) (holding that a plea colloquy was sufficient and thorough even though the defendant expressed confusion regarding the proceedings and the district court allowed the defendant to speak with counsel). Woodard's reliance on her attorney to rephrase a single question did not raise red flags as to her competency at the plea hearing or negate the colloquy's thoroughness. Based on the totality of the circumstances, no plain errors were present and Woodard knowingly and voluntarily pled guilty.

### C. Sentence Violated the *Ex Post Facto* Clause

Woodard argues that her sentence should be vacated and remanded for resentencing because the district court violated the *Ex Post Facto* Clause. Because Woodard did not raise this argument to the district court, our review is plain error. *Henderson v. United States*, 133 S. Ct. 1121, 1127 (2013). Under plain error review, a defendant must show that: (1) there was error; (2) it was plain; (3) it affected his substantial rights; and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Woodard is correct that the district court violated the *Ex Post Facto* Clause by utilizing the version of the Sentencing Guidelines in effect at the time of her sentencing rather than the Guidelines in effect at the time she committed her crime. Although the district court correctly sentenced Woodard under then-controlling Seventh Circuit precedent, a subse-

quent change in the law mandates that Woodard's sentence be vacated and her case remanded for resentencing.

Woodard committed her crime between January 2006 and December 2007. However, due to numerous delays she was not sentenced until October 5, 2012. In sentencing Woodard, the district court followed then-controlling Seventh Circuit precedent, which held that the *Ex Post Facto* Clause did not prohibit sentencing a defendant under the version of the Guidelines in effect at the time of sentencing. *See generally United States v. Demaree*, 459 F.3d 791, 793-95 (7th Cir. 2006).

After Woodard's sentencing, the Supreme Court, in *Peugh v. United States*, 133 S. Ct. 2072 (2013), reversed *Demaree*. In *Peugh*, the Supreme Court held that the *Ex Post Facto* Clause is violated when a defendant is sentenced under Guidelines that were promulgated after the commission of the crime when the use of those Guidelines results in a higher sentencing range than the one calculated under the Guidelines in effect at the time the offense was committed. *Id*. at 2088. *Peugh* applies to Woodard's case. Although the district court sentenced Woodard under then-controlling Seventh Circuit precedent, it is plain at the time of our review that under *Peugh*, the district court committed an error. *See Johnson v. United States*, 520 U.S. 461, 468 (1997).

When the court utilized the 2011 version of the Sentencing Guidelines, it calculated Woodard's total offense level at 30, making the applicable Guidelines range 97 to 121 months. If the 2007 version of the Sentencing Guidelines had been applied, Woodard's total offense level would have been 24, making the applicable Guidelines range 51 to 63 months. Such a disparity in the Guidelines range impacted the integ-

rity of the judicial proceedings. *See United States v. Jaimes–Jaimes*, 406 F.3d 845, 851 (7th Cir. 2005). Because the district court chose Woodard's sentence while considering improper Guidelines, the court violated the *Ex Post Facto* Clause. As a result, as we discussed recently in *United States v. Williams*, Woodard's sentence must be vacated and remanded for resentencing. *See* No. 13-1260, 2014 WL 486244, at * 1 (7th Cir. Feb. 7, 2014) (per curiam).

## III. CONCLUSION

We AFFIRM the judgment of the district court, VACATE the sentence, and REMAND for resentencing.