In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 17-1580 and 17-1776

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TODD A. DYER,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 15 CR 115 — **J.P. Stadtmueller**, *Judge.*
No. 16 CR 100 — **Pamela Pepper**, *Judge.*

ARGUED APRIL 24, 2018 — DECIDED JUNE 13, 2018.

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

PER CURIAM. Todd Dyer, the defendant in this consolidated appeal, challenges the denials of his motions to withdraw his guilty pleas. Under a written agreement, Dyer pled guilty to wire fraud, 18 U.S.C. § 1343, and unlawful financial transactions, 18 U.S.C. § 1957, for his conduct in two separate fraud schemes. He now claims that the plea colloquy was insufficient, in part because the district court did not adequately

explore the potential effects of his bipolar disorder. We affirm the judgments.

## I. BACKGROUND

Dyer originally faced three prosecutions for three schemes, but the third was dismissed as part of his plea agreements. In the first, "the Farmland case," (Case No. 17-1580), Dyer created several entities known collectively as American Farmland Partners, ostensibly to form a real estate investment trust. Using an alias to hide his past conviction for a different scheme, Dyer solicited investments in person and through websites, videos, and radio advertisements, avowing that the business would buy and maintain profitable farmland, sell stock interests, and parcel the proceeds out to interest holders. But the promotions rested on misrepresentations—including that the company already had purchased farmland, that prior investors had earned returns, and that a large-scale public offering of shares was imminent. In reality, during its three-year run, the company never purchased land; had no clear plan for a public offering; and funneled almost all of the investments—about two million dollars—to Dyer and his codefendants for their personal use, with the remainder used to make payments in furtherance of the scheme.

After two years of pretrial proceedings in the Farmland case, Judge Stadtmueller set a December 2016 trial date. Dyer exercised his right to represent himself, albeit with help from standby counsel. In opening statements, Dyer asserted his innocence; the government, he said, misunderstood his legitimate business model.

But, over the course of two days, eleven witnesses testified against Dyer, detailing how he organized and implemented

the scheme. On the second day, Dyer tried to introduce an exhibit while cross-examining a witness, even though he had not submitted an exhibit list before trial. The judge admonished Dyer in the presence of the jury, informing him that he must "follow the same rules of every lawyer" and that the judge was "not going to play games like [Dyer] continue[s] to play games with the Court, the court staff, the government, the witness." The jury was then excused, and the judge warned Dyer that he would not "continue the game of obfuscation and charade" or "tolerate abuses" of the judicial process. Later that day, the parties say, Dyer told the government that he wanted to stop the trial and plead guilty.

While the Farmland case was being investigated, Dyer organized another scheme that became the subject of "the Insurance case," (Case No. 17-1776). Joan Bakley purchased a life insurance policy through Dyer's father, James. The policy later lapsed for nonpayment. Dyer convinced the Bakley family that James had somehow "stolen" their insurance policy by making himself the beneficiary. Claiming to have contacts at the issuing insurance company, Dyer entered into a consulting agreement with the family.

Dyer's representations were false. His father did not steal the policy, and Dyer had no contacts at the insurance company. For his purported services, the Bakleys paid Dyer nearly $1,000,000 in 30 or so installments. Pretrial proceedings in the Insurance case were underway when Dyer approached prosecutors from the Farmland case about pleading guilty.

The day after Dyer asked to halt the Farmland trial, he signed written plea agreements for both the Farmland and Insurance cases. He would plead guilty to two counts of wire fraud and two counts of unlawful financial transactions, in

exchange for dismissal of the remaining charges in these two cases and all charges in a third case.

The next day, Magistrate Judge Jones, who previously had reviewed Dyer's competence to proceed *pro se*, held a consolidated change-of-plea hearing. Dyer testified that he was comfortable reading complex documents and understood his plea agreement, which he reviewed "extensively" with standby counsel. No threats, promises, or other inducements were made, Dyer said. He confirmed that he was not using drugs or alcohol, and that he was "fully in the moment and understanding what's going on." The magistrate reviewed the plea agreement and its factual basis with Dyer, who confirmed that the allegations were true.

Dyer offered his pleas of guilty, and the magistrate recommended accepting them on December 7, 2016. The district judges in both cases adopted the recommendation without objection.

Dyer moved to withdraw his guilty plea in the Farmland case the day before his sentencing hearing. He alleged that the government and its witnesses had made false statements to the court, and that Judge Stadtmueller was biased. The court denied Dyer's motion with little comment and sentenced him on March 8, 2017, to 180 months' imprisonment.

A few weeks later, Dyer appeared for sentencing before Judge Pepper in the Insurance case. Dyer again asked to withdraw his guilty plea, explaining that he was innocent but had negotiated a plea agreement because he felt prejudiced by the proceedings in Judge Stadtmueller's court. Judge Pepper asked Dyer why he pled guilty in two cases before two differ-

ent judges instead of simply waiting to appeal in the Farm-land case. Dyer responded that he understood he could have appealed, but suggested that his "judgment was off" because he suffers from bipolar disorder. Still, Dyer confirmed that nothing on the day of his change-of-plea hearing had substantially clouded his judgment or impaired his ability to understand the colloquy. He insisted, however, that he felt "forced" to plead guilty, though he confirmed that he was not directly threatened.

Judge Pepper denied Dyer's motion because he was fully advised of the consequences of pleading guilty and made a "valid decision" to end his trial proceedings. On March 23, 2017, she sentenced him to 110 months' imprisonment. In deciding the sentence, Judge Pepper considered Dyer's bipolar disorder, as mentioned in his presentence report, but concluded that his condition was not strongly mitigating because he chose to forgo treatment.

He now appeals, challenging the district courts' denials of his motions to withdraw his guilty plea on the basis that the magistrate judge's plea colloquy was insufficient.

## II. ANALYSIS

Before addressing the merits of Dyer's arguments, we must resolve a dispute over the standard of review. Dyer asks that we review for abuse of discretion, *see United States v. Fard*, 775 F.3d 939, 943 (7th Cir. 2015), but the government responds that plain-error review is appropriate because Dyer did not alert the district judges to any specific deficiency in the

Rule 11 colloquy.[1] *See United States v. Stoller*, 827 F.3d 591, 595 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1093 (2017). We agree with the government's assessment. Dyer used his motions to withdraw his guilty plea to argue his innocence and did not raise a challenge resembling the one he now presents on appeal. We therefore limit our analysis to plain-error review.

Under this standard of review, a defendant must demonstrate a reasonable probability that, but for the court's plain error, he would not have entered the plea. *See United States v. Sura*, 511 F.3d 654, 661–62 (7th Cir. 2007). In this case, though, Dyer has failed to demonstrate any plain error in the first instance.

A guilty plea must substantially comply with the requirements of Federal Rule of Criminal Procedure 11. *Stoller*, 827 F.3d at 597. That rule requires a colloquy to ensure that the plea is voluntary and the defendant understands the nature of the charges against him. FED. R. CRIM. P. 11(b).

Dyer argues first that the magistrate did not adequately inquire into his mental health during the plea colloquy. To be sure, the magistrate asked Dyer *some* questions to assess his mental state, and concluded from their interaction that Dyer

---

[1] After filing its response brief, the government submitted a Circuit Rule 28(j) letter asserting that Dyer waived his claims by not objecting to the magistrate's recommendation before the district judges accepted it. Setting aside any question whether Dyer had adequate time to object to the recommendation or would need to do so in order to "withdraw" a plea that a district court had not yet formally accepted, the government waived its waiver argument by saving it for a Rule 28(j) letter. *See Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (explaining that Rule 28(j) letter does not "provide a second forum" for "wholly new or different arguments").

was of clear mind and "fully in the moment and understanding what's going on." But Dyer now argues that the standard colloquy was not enough in his case because he suffers from bipolar disorder, which could have impacted his judgment. Dyer presumes that his having a mental illness either vitiated his ability to plead guilty or, at least, obligated the court to probe his mental health at the colloquy.

But defendants with mental illnesses can and often do enter knowing and voluntary pleas, so long as the judge can determine that the defendant is able to understand and participate in the proceedings. *See, e.g.*, *United States v. Woodard*, 744 F.3d 488, 496 (7th Cir. 2014). And Dyer points to no evidence that his judgment was significantly impaired during either the plea-agreement negotiations or the colloquy. Rather, the transcript shows that the magistrate thoroughly assessed Dyer's ability to understand his rights. Dyer testified that he was not under the influence of drugs or alcohol, and agreed with the magistrate's assessment that he was "fully in the moment and understanding what's going on."

He also said he was comfortable reading complex documents and felt confident that he understood his plea agreements. These statements, made under oath, are presumed true. *United States v. Chapa*, 602 F.3d 865, 869 (7th Cir. 2010). Dyer himself later confirmed the veracity of his testimony when, a few days after his change-of-plea hearing, he reaffirmed to Judge Pepper that nothing affected his judgment or his ability to understand the questions at the colloquy. Absent evidence that Dyer's ability to think was substantially impaired, "it can't just be assumed" that his mental illness obstructed his ability to understand his pleas. *United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012).

Next, Dyer attacks the colloquy as insufficient because the magistrate was incurious and accepted one-word answers without eliciting narrative responses. For instance, the magistrate did not ask him why he decided to plead guilty (after insisting for so long that he was innocent), neglected to elicit an oral narrative of the facts from him, and failed to advise him that his pleas would waive his right to contest Judge Stadtmueller's alleged trial misconduct.

Yet Dyer acknowledges that these considerations are not among Rule 11's express requirements. *See United States v. Adigun*, 703 F.3d 1014, 1020 (7th Cir. 2012) (noting trial court's lack of obligation to inform defendant of plea's effect on appellate rights); *United States v. Lacey*, 569 F.3d 319, 323–24 (7th Cir. 2009) (leaving plea undisturbed even though factual basis was stated by government and confirmed by defendant with simple "Yes, sir" response). And although some appellate opinions encourage trial judges to elicit narrative responses during the plea colloquy, eliciting only "yes" or "no" answers "does not defeat the presumption" that the defendant's "answers were truthful and that he actually understood the consequences of changing his plea to guilty." *United States v. Gonzalez*, 765 F.3d 732, 741 (7th Cir. 2014). Here it was not plainly erroneous for the magistrate to conclude that Dyer's "Yes, sir" answers demonstrated his understanding of the agreements and his willingness to plead guilty.

Finally, Dyer contends that his decision to plead guilty required a more thorough colloquy because it marked a dramatic shift from his prior protests of innocence. But his sudden change of heart is no anomaly; defendants who once asserted their innocence often change their plea, and there was

no reason for the district court or the magistrate to find that phenomenon unusual in this case.

### III. CONCLUSION

For the foregoing reasons, the judgments are AFFIRMED.