In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2366

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PEJMAN KAMKARIAN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:19-cr-40014-SMY-1 — **Staci M. Yandle**, *Judge.*

_____

ARGUED AUGUST 1, 2023 — DECIDED AUGUST 23, 2023

_____

Before WOOD, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Pejman
Kamkarian pled guilty, without a plea agreement, to pos-
sessing child pornography in violation of 18 U.S.C.
§ 2252A(a)(5)(B) and (b)(2). He later moved to withdraw that
plea, arguing that he had not been competent to plead guilty.
The district court wisely ordered a further psychological eval-
uation, which found that defendant had been competent to
plead, and held an evidentiary hearing where defendant

testified. After careful consideration of the unusual evidence in the case, the court found that defendant's testimony at the hearing was not credible, that he had been competent to plead guilty, and that he had done so knowingly and voluntarily. We affirm. The district court's factual findings are not clearly erroneous, and the court certainly did not abuse its discretion in denying the motion to withdraw the guilty plea.

I.   *Factual and Procedural Background*

In 2017, an FBI agent investigating a file-sharing network received child pornography from a computer with an IP address belonging to defendant. FBI agents executed a search warrant at defendant's home. They seized digital devices, including two laptop computers. The computers contained twelve videos and more than 46,000 images of child pornography.

Defendant Kamkarian was indicted in 2019. He initially pled not guilty and was released on bond. The court set conditions for pretrial release, including monitoring and restricting his use of electronics. The court also required defendant to participate in mental-health treatment. Defendant attended counseling but he refused to submit to a psychiatric evaluation. Later, however, defendant mentioned to probation officers the possibility of suicide and self-harm. The U.S. Probation Office took steps to have defendant admitted to a hospital for ten days.

Five days into that hospital stay, defendant was transported to the district court and changed his plea to guilty. He did not have a plea agreement with the government. At the change-of-plea hearing, defendant stipulated to the evidence the government would offer to convict him. The court then

placed him under oath and proceeded with the required detailed plea colloquy and review of his trial rights. The court confirmed that defendant could read, write, and understand the English language; that he was able to think clearly and understand the proceedings; that he was fully satisfied with his counsel's advice; that no one had forced him to plead guilty; and that he was doing so freely and voluntarily. When the court asked how he pled, defendant asked to speak with his lawyer, and the parties briefly went off record. Back on the record a few minutes later, he pled guilty, and—critically—the court accepted his plea.

During the change-of-plea hearing, the government asked the court to order that defendant return to the hospital for more mental-health monitoring, saying that he was "deteriorating." Then, a few months later, the government petitioned to revoke defendant's pretrial release. The government asserted that defendant had violated the terms of his pretrial supervision by avoiding a psychiatric examination and by altering a cell phone and laptop computer to prevent probation officers from monitoring his use. The government also told the court that defendant had expressed suicidal thoughts. The court granted the petition, and defendant was detained shortly before Covid-19 lockdowns began.

Later, with new counsel, defendant moved to withdraw his guilty plea. He argued that at the time he pled guilty, he had been diagnosed with and was receiving in-patient treatment for depression. His therapist wrote that on the day he pled guilty, defendant "did not appear to be in proper mental or physical health to make a decision … due to the intensity of his depression." Also, a legal secretary who saw him that day testified by affidavit that he appeared "distraught" and

told her that he did not want to plead guilty but said he felt "he had no choice" and was "forced" to do so. Based on this information, defendant moved for a psychological evaluation to determine if he had understood the nature and consequences of the proceedings. The court granted the request. Defendant also asked for an interpreter, arguing that English was his second language—Farsi is his first language. The court denied that request.

A forensic psychologist interviewed defendant and reviewed his treatment records. The psychologist opined that defendant had "Major Depressive Disorder … with Anxious Distress," but that his condition did not render him incompetent to plead guilty. Also, the psychologist said, defendant had no difficulty communicating in English.

After receiving the report of the psychological evaluation and other documents, the district court held an evidentiary hearing on the motion to withdraw the guilty plea. Defendant testified that he had misunderstood the prior proceedings and had felt pressure by his previous attorney to plead guilty. He also testified that he was not actually guilty. The district judge denied his motion with an oral explanation of her findings and reasoning. The judge explained that she recalled defendant's change of plea and that he had not appeared distressed, confused, or under duress. She discredited his testimony to the contrary and accepted the psychological assessment of his competency. The court sentenced defendant to 87 months in prison and 15 years of supervised release and ordered him to pay $48,000 in restitution.

II. *Analysis*

On appeal, defendant Kamkarian argues that the district court abused its discretion in denying his motion to withdraw

his guilty plea. Under Federal Rule of Criminal Procedure 11(d)(2)(B), once the court accepts a guilty plea, the defendant may withdraw it only for a "fair and just reason." This court has recognized three broad reasons that may justify allowing a defendant to withdraw a guilty plea: (1) the defendant is innocent, (2) the defendant received ineffective assistance of counsel, and (3) the plea was not knowing and voluntary. See *United States v. Barr*, 960 F.3d 906, 917–18 (7th Cir. 2020). On appeal we review the denial of a motion to withdraw a plea for abuse of discretion, and we review factual findings, including whether a plea was entered knowingly and voluntarily, for clear error. *Id*. at 917.

Defendant argues that in pleading guilty he received ineffective assistance of counsel. When a defendant bases a motion to withdraw a guilty plea on a claim of ineffective counsel, the court considers whether the attorney's performance was objectively unreasonable and whether, but for that deficient performance, the defendant would not have pled guilty. *United States v. Smith*, 989 F.3d 575, 580–81 (7th Cir. 2021) (affirming denial of motion to withdraw plea); see generally *Strickland v. Washington*, 466 U.S. 668, 696–97 (1984). Defendant contends that his former counsel was deficient by not considering his mental health at the time of his guilty plea. Defendant emphasizes, understandably, that he had been hospitalized before and after the hearing, that his therapist and a legal secretary he saw that day thought he was not competent to plead guilty, and that the government itself described his mental health as "deteriorating."

Under those circumstances, the district court properly took the defense motion seriously, ordering a psychological evaluation and setting an evidentiary hearing. See *United*

*States v. Hardimon*, 700 F.3d 940, 943 (7th Cir. 2012) ("A judge is required to investigate the defendant's mental state if there are indications at the plea hearing or later of an impairment that made him incompetent to plead."); cf. *United States v. Dyer*, 892 F.3d 910, 914 (7th Cir. 2018) (affirming denial of motion to withdraw plea; defendant's bipolar disorder did not undermine his ability to understand proceedings and make decision); *United States v. Reed*, 859 F.3d 468, 471 (7th Cir. 2017) (affirming denial of motion to withdraw plea; such a motion is unlikely to have merit if it requires contradicting defendant's sworn answers during plea colloquy); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (motion to withdraw plea may "be rejected out of hand unless the defendant has a compelling explanation" for his change in testimony from plea colloquy). The fact that defendant was receiving in-patient mental-health treatment for his own safety before and after the plea hearing distinguishes this case from those where motions to withdraw might be denied "out of hand."

For two reasons, however, we affirm the denial of this defendant's motion to withdraw his guilty plea. First, during the change-of-plea hearing, the judge heard and watched defendant testify that he understood the proceedings, that his thinking was clear, that he was satisfied with his attorney, and that his guilty plea was voluntary. The judge received these assurances while defendant was under oath and while observing his demeanor and allowing him time to go off the record to speak privately with his attorney before he pled guilty. Those circumstances are designed to ensure that a guilty plea is knowing and voluntary. The district judge taking the plea is in the "best position to determine" whether the defendant's assurances when pleading guilty are proper. *United States v.*

*Walker*, 447 F.3d 999, 1005 (7th Cir. 2006). At the later hearing on the motion to withdraw, the judge recalled her detailed conversation with defendant in the plea hearing. She recalled that there "was no indication of any distress or feeling of duress or coercion or discomfort between him and his counsel." The judge also recalled that defendant had told her that he was able to think clearly and to understand the proceedings and that he was fully satisfied with his attorney. The judge found "no basis, no credible basis for me to grant the motion" to withdraw the guilty plea. We give great deference to such findings of fact and credibility by the district judge. E.g., *United States v. Vizcarra-Millan*, 15 F.4th 473, 494 (7th Cir. 2021) (affirming denial of motion to withdraw plea, noting deference to district court's credibility determination).

Second, the judge did not rely on only her own perception and recollection of defendant's demeanor. The judge properly explored further defendant's mental health (and whether his attorney had ignored it) by ordering the fresh psychological evaluation and the hearing. The psychologist found, after interviewing defendant and reviewing his medical records, that he had been mentally competent to plead guilty knowingly and voluntarily. The judge could reasonably accept this professional opinion and reject defendant's later denials. See *Vizcarra-Millan*, 15 F.4th at 494.

Defendant makes one final argument. He contends that his plea was unknowing because he lacked a Farsi interpreter during the criminal proceedings. The district court did not clearly err in finding otherwise. Defendant testified under oath that he had no difficulty understanding, reading, or writing in English. The consulting psychologist confirmed that he did not have difficulty communicating in English. The district

court had reasonable grounds for rejecting defendant's request for an interpreter.

To sum up, the district court did not err by relying on defendant's original sworn assertions about his competency, guilt, and satisfaction with counsel, coupled with the psychological evaluation that confirmed his competence to plead guilty. The district court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. The judgment of the district court is AFFIRMED.