In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 23-2166

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD A. STENSON,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:19-cr-127 — **Lynn Adelman**, *Judge.*

---

ARGUED JANUARY 10, 2024 — DECIDED FEBRUARY 17, 2026

---

Before SYKES, HAMILTON, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Donald Stenson pleaded guilty to two counts of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 1596(a)(1). He moved to withdraw his plea, arguing that he had felt rushed to sign the plea agreement and his anxiety medication had materially impacted his cognition. The district court denied the motion after an evidentiary hearing. Stenson appeals, arguing that the

court abused its discretion in denying his request to withdraw his guilty plea. We affirm.

**I**

According to the government, Donald Stenson made multiple visits to the Philippines over the span of several years to solicit minors between the ages of eleven and seventeen to perform sex acts. He, along with co-defendant John Burgdorff, purportedly offered these minors money, gifts, and food in exchange for oral and vaginal sex.

A grand jury charged Stenson with seven counts of traveling in foreign commerce to engage in sexual activity with minors in violation of 18 U.S.C. § 2423(c) and (e). He was also charged with seven counts of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), and (c), and 1596(a)(1).

At his change-of-plea hearing, Stenson pleaded guilty to two counts of sex trafficking of a minor. At the start of his plea hearing, the district court informed Stenson that he was required to answer the court's questions truthfully and that failure to do so could lead to a separate prosecution for making false statements. Stenson replied that he understood.

During the plea colloquy, Stenson stated that he was pleading guilty because he realized that doing so was his most sensible option. He responded to the court's questions appropriately and even asked for clarification when he did not understand a particular question. He also told the court that he had reviewed his plea agreement with his lawyers; he understood its terms; he was "very satisfied" with his lawyers' efforts; and he was pleading guilty voluntarily.

In his plea agreement, Stenson similarly represented that he had reviewed the agreement in its entirety with his attorneys, fully understood it, entered the agreement voluntarily, and was satisfied with his attorneys' assistance. He also affirmed that he was not under the influence of any drug or medication that could impair his ability to understand the agreement or its terms.

After the district court entered his guilty plea, however, Stenson moved to withdraw his guilty plea, arguing that it was not knowing and voluntary. Relevant to this appeal, he claimed that he had felt pressured to sign the plea agreement the morning of the hearing. He also asserted that, earlier that morning, he had taken an anti-anxiety medication, Clonazepam, which had made him feel anxious, distraught, and compliant. In support, he referenced the website, Drugs.com, which listed Clonazepam's potential side effects. After an evidentiary hearing, the district court denied the motion in a written order, which Stenson now appeals.[1]

## II

We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Barr*, 960 F.3d 906, 917 (7th Cir. 2020). But we review "factual findings, including whether a plea was entered knowingly and voluntarily, for clear error." *United States v. Kamkarian*, 79 F.4th 889, 892 (7th Cir. 2023).

Where, as here, "an elaborate written plea agreement is present in a case where a defendant is represented by counsel,

---

[1] Although Stenson filed a *pro se* motion to reconsider the court's ruling, he later withdrew it.

our review of the proceedings will include a look at that agreement itself as well as the judge's Rule 11 colloquy." *United States v. Akinsola*, 105 F.3d 331, 334 (7th Cir. 1997); *see United States v. Mitchell*, 58 F.3d 1221, 1223 (7th Cir. 1995) ("It is elementary that this court will look to the entire record of proceedings[.]").

Stenson contends that the district court abused its discretion in denying his motion because his guilty plea was not knowing and voluntary. He felt rushed to sign the plea agreement, Stenson claims, and the court failed to confirm that he had had sufficient time to review it with counsel. Stenson also leans on his own affidavit and a list of Clonazepam's side effects he found online to argue that his medication had materially influenced his decision to plead guilty.

"Guilty pleas are to the criminal justice system what motor oil is to automobiles; you can't run one without the other. And guilty pleas are in abundance because the overwhelming majority of defendants (around 90 percent) resolve their cases without trials." *Akinsola*, 105 F.3d at 332. For this reason, once a district court accepts a guilty plea, a "defendant does not have an unlimited right to withdraw the plea." *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir. 2000).

Instead, the burden is on the defendant to show a "fair and just reason" for withdrawal. Fed. R. Crim. P. 11(d)(2)(B). "This court has recognized three broad reasons that may justify allowing a defendant to withdraw a guilty plea: (1) the defendant is innocent, (2) the defendant received ineffective assistance of counsel, and (3) the plea was not knowing and

voluntary."[2] *Kamkarian*, 79 F.4th at 892 (citation omitted). "But the defendant bears a heavy burden of persuasion in showing such a reason exists." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015) (citation omitted).

Here, Stenson takes the third route, arguing that his guilty plea was not knowing and voluntary. But, because he told the district court the opposite at the plea hearing, "he faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is fair and just." *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995) (internal quotation marks omitted). Indeed, in such cases, "the district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing." *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993).

## A. Reviewing the Plea Agreement

First, Stenson asserts that he felt pressured into signing the plea agreement on the morning of the plea hearing and that the court failed to confirm that he had had enough time to

---

[2] As we explained in *United States v. Merrill*:

Ineffective assistance of counsel that leads to the involuntary or unknowing entry of a guilty plea can be such a reason. In assessing whether a defendant received ineffective assistance, this court applies the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), asking whether the attorney's performance was objectively unreasonable and whether, but for the deficient performance, the defendant would not have pleaded guilty.

23 F.4th 766, 769–70 (7th Cir. 2022) (citations omitted).

consult his lawyers about it. To make his case, he points to the following exchange:

> THE COURT: And you've had enough time to talk to your lawyers? You're satisfied with their efforts?
>
> DEFENDANT: Very satisfied, Your Honor.

But, even if that passage somehow supported his argument (which is questionable), he ignores what followed:

> THE COURT: All right. I have a plea agreement here. I assume you went over this with your lawyer. You came to an understanding of it, and you signed it?
>
> DEFENDANT: Yes, Your Honor.

The district court relied on this exchange when it denied Stenson's motion to withdraw his plea. If Stenson had indeed felt that he was given insufficient time to review the plea agreement, the court reasoned, he had the opportunity to say so. Furthermore, the district court observed, Stenson had acknowledged in the plea agreement itself that he had reviewed the entire agreement with counsel and understood it.

In short, the district court relied on Stenson's own admissions, both in person and on paper, to find that his guilty plea was knowing and voluntary. This was not clear error.

## B. Influence of Medication

Next, Stenson contends the district court erred by ignoring the adverse impacts his medication, Clonazepam, had on his ability to understand the consequences of his actions. But, when denying his motion to withdraw his plea, the district court indicated that "nothing in [Stenson's] demeanor or the content of his responses suggested that he was anxious or distraught, or simply responding yes to every question." When

Stenson did not understand a question, he asked for clarification. And when the court asked Stenson whether he found his counsel's work to be satisfactory, rather than offering a monosyllabic response, he replied, "Very satisfied, Your Honor." What is more, in his plea agreement, which he had signed shortly before the hearing, Stenson acknowledged that he was not "on or under the influence of any drug [or] medication … which would impair [his] ability to understand the terms and conditions of this agreement[.]"

Focusing on this last point, Stenson contends that the district court's conclusion about when he signed the plea agreement was mistaken. But Stenson's own affidavit attests that he signed the amended plea agreement that very morning. And Stenson's contention that he felt rushed to sign the agreement the morning of the hearing corroborates this finding.

Admittedly, the district court did not expressly ask Stenson during the plea colloquy whether he had taken any drug or medication that might impair his understanding of the proceedings. And we certainly encourage district courts to cover this topic during a plea colloquy. *See United States v. Fountain*, 777 F.2d 351, 356 (7th Cir. 1985) ("[A] dialogue between the court and the person making the plea is the best method for establishing the factual basis of a plea as well as its voluntariness."). But the district court observed Stenson firsthand and perceived nothing about his demeanor indicating that he was confused, anxious, or mindlessly responding to questions. *See Collins*, 796 F.3d at 834–35 ("Crediting the judge's impressions over a defendant's subsequent bare protestations prevents the entry of a plea from being some empty ceremony, a mere trifle that defendants may elect to disregard.") (citation modified). When we add the assurances Stenson gave during the hearing

and in the plea agreement regarding his comprehension of his change of plea, we cannot say that the district court's finding that Stenson's guilty plea was voluntary was clearly erroneous. *See Fountain*, 777 F.2d at 356 ("[I]t is axiomatic that the required dialogue will vary from case to case.") (citations omitted).

Turning to Stenson's reliance on the list of Clonazepam's side effects from Drugs.com, which included "memory problems" and "confusion," the district court found this argument unpersuasive, citing *United States v. Hardimon,* 700 F.3d 940 (7th Cir. 2012). In that case, the defendant tried to withdraw a guilty plea by providing an email from his psychiatrist stating that Prozac could (on rare occasions) affect a person's ability to think and make decisions. *Id.* at 942. But, as we explained, "[t]hese drugs are taken by millions of people, and it can't just be assumed from the fact that someone is taking them that [they] can't think straight." *Id.* at 944. Thus, we held, "[t]o make a case for being permitted to withdraw his guilty plea when the judge's inquiries at the plea hearing had been adequate and had revealed no impairment of the defendant's ability to think, the defendant needs to present the affidavit of a qualified psychiatrist" to describe any adverse impacts and indications of impairment. *Id.*

Stenson argues that *Hardimon* is distinguishable because there, unlike here, the district court had specifically asked the defendant whether he had taken any medication. *Id.* at 941–42. But, given the district court's observation of Stenson's demeanor during the hearing and his many assurances, the absence of this one question does not render the overall colloquy inadequate. *See Fountain*, 777 F.2d at 356 (recognizing the case-by-case nature of a plea colloquy).

Stenson also asserts that the medication in *Hardimon*, Prozac, is designed to help a person think more clearly, while his medication, Clonazepam, is not. But neither Stenson nor the district court has the necessary expertise to weigh these differences, which is precisely why a qualified psychiatrist's affidavit is necessary.

As for Stenson's own testimony that his medication impaired his comprehension, the district court gave it little weight in light of the many indications to the contrary. This too was well supported by the record and not clearly erroneous. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily[.]").

\*      \*      \*

The judgment is AFFIRMED.